[S.F. No. 23595. Aug. 24, 1977.]

EMILY MONTAGUE·HARRIS et al., Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Leonard I. Weinglass, Mark D. Rosenbaum, Jill Jakes, Fred Okrand, Gary Sowards, Susan B. Jordan, Cumings & Jordan, Charles C. Marson, Margaret C. Crosby and Alan L. Schlosser for Petitioners.

Michael E. Ballachey, Lincoln N. Mintz, James J. Brosnahan, Stanley J. Friedman, Lucy K. McCabe and Gordon H. Armstrong as Amici Curiae on behalf of Petitioners.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein and Herbert F. Wilkinson, Deputy Attorneys General, for Respondent and for Real Party in Interest.

Richard J. Moore, County Counsel (Alameda), James E. Jefferis, Assistant County Counsel, and Adam Seth Ferber, Deputy County Counsel, as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**MANUEL, J.**—Petitioners Emily Montague Harris and William Taylor Harris, defendants in a pending criminal proceeding wherein they are

charged with multiple felony violations, seek a writ of prohibition and/or mandate compelling respondent superior court to vacate its appointment of certain attorneys to represent them in the said proceeding and to appoint as assigned counsel certain other attorneys of their own choosing. Under the circumstances here presented, we have determined that the writ should issue.

On April 14, 1976, a complaint was filed in the Municipal Court for the Berkeley-Albany Judicial District, County of Alameda, charging petitioners with two counts of aggravated kidnaping (Pen. Code, § 209), three counts of robbery (Pen. Code, § 211), twelve counts of assault with a deadly weapon (Pen. Code, § 245), and two counts of felony false imprisonment (Pen. Code, §§ 236, 237). On September 23, 1976, the date set for arraignment on the complaint, petitioners appeared in the municipal court and, after entering pleas of not guilty to all counts, requested the court to appoint Attorneys Susan B. Jordan and Leonard I. Weinglass, then present in court by way of "special appearance" with the court's permission, to represent them in the proceedings. The court, Judge Wilmot Sweeney presiding, advised petitioners that he would consider their request for the appointment of specific counsel for municipal court proceedings in the event that a conflict were declared by the public defender, and he referred petitioners to that officer for interview.

On September 29, 1976, Judge Sweeney, having received an affidavit of conflict as to both petitioners on the part of the public defender, appointed Susan B. Jordan to represent petitioner Emily Montague Harris and Leonard I. Weinglass to represent petitioner William Taylor Harris in all municipal court proceedings. On the same date, however, the Alameda County Grand Jury returned a bill of indictment charging petitioners with one count of aggravated kidnaping with bodily harm (Pen. Code, § 209), one count of simple kidnaping (Pen. Code, § 207), one count of robbery (Pen. Code, § 211), nine counts of assault with a deadly weapon (Pen. Code, § 245), and one count of felony false imprisonment (Pen. Code, §§ 236, 237). In view of this the People declined to proceed with the presentation of evidence in the municipal court and moved that the complaint be dismissed pursuant to Penal Code section 871; the motion was granted by order dated October 7, 1976.

Prior to this date, on October 1, 1976, petitioners had made their first appearance in the superior court. They were accompanied by Attorneys Jordan and Weinglass, who were purporting to represent them under the

municipal court appointment of September 29. It appearing that the public defender had filed affidavits of conflict in the matter, petitioners were advised that they were entitled to have counsel appointed for the superior court proceedings. Petitioners thereupon requested that Attorneys Jordan and Weinglass be so appointed, and the attorneys in question were also permitted to address the court on this matter. Attorney Weinglass indicated that he would be willing to waive any extraordinary expenses arising from the fact that his practice is located in Los Angeles, and petitioner Emily Montague Harris stated that in her opinion no conflict would arise out of the fact that Attorney Weinglass, who had represented her in other related proceedings in Los Angeles County, would represent her husband in the instant proceedings. Judge Lindsay, however, while expressing his intention to take petitioners' preferences and the qualifications of the suggested attorneys into account, declined to make a present ruling in the matter and continued the proceedings to October 7, when he indicated that counsel would be appointed. Attorneys Jordan and Weinglass were permitted to advise petitioners on a pro bono basis in the interim.

On October 7, 1976, Judge Lindsay appointed Attorney Michael Ballachey to represent petitioner Emily Montague Harris and Attorney Lincoln Mintz to represent petitioner William Taylor Harris in the superior court proceedings. He indicated that among the factors which he had considered important to his selection was the reputation of the appointed attorneys among the local bench and bar, their experience in the trial of capital cases,[1] and the fact that both were certified as criminal law specialists by the State Bar. Petitioners strenuously objected to the appointments, pointing out that they had developed a relationship of trust and confidence with Attorneys Jordan and Weinglass and were convinced that they would afford the best possible defense to the charges. Although knowing nothing about Attorneys Ballachey and Mintz beyond what the court had related concerning them, petitioners suggested that as "total strangers" they could not provide as adequate a defense as Attorneys Jordan and Weinglass. The court thereupon continued the matter to October 13 for arraignment.

On October 13, 1976, the date set for arraignment, petitioners appeared with Attorneys Ballachey and Mintz, the attorneys appointed by the court to represent them. At this time both of the said attorneys joined in petitioners' request that Attorneys Jordan and Weinglass be

[1]Although no capital offenses are charged in the indictment, violation of Penal Code section 209 with bodily harm is punishable by life imprisonment without possibility of parole.

appointed. Attorney Mintz, appearing for petitioner William Taylor Harris, moved that an evidentiary hearing be held for the purpose of establishing the reasons why the court's discretion should be exercised in favor of appointing Attorney Weinglass in his stead. Attorney Ballachey, appearing for petitioner Emily Montague Harris, took the position that Attorney Jordan had been appointed by the municipal court to represent Mrs. Harris and that that appointment should be continued in the superior court. The court, addressing itself to Attorney Mintz' motion, indicated its willingness to hold a hearing of the general nature requested[2] at a future date.

On December 2, 1976, following other proceedings concerning an unsuccessful motion by petitioners to disqualify Judge Lindsay for cause (Code Civ. Proc., § 170, subd. 5),[3] the inquiry relative to appointment of counsel was held. Pursuant to prior order of the court the parties had previously submitted memoranda relative to the appropriate scope of the inquiry, and at the outset of the hearing the court announced that, following "the procedures set forth in *Drumgo* v. *Superior Court* [(1973) 8 Cal.3d 930 (106 Cal.Rptr. 631, 506 P.2d 1007, 66 A.L.R.3d 984)] [and] . . . *People* v. *Marsden* [(1970) 2 Cal.3d 118 (118 Cal.Rptr. 156, 465 P.2d 44)]," it would "afford opportunity to the defendants to state specific reasons and argument for request of discharge of appointed counsel." Because the proceedings were to be nonadversarial, the People were not permitted to participate, but the district attorney was allowed to remain at the counsel table as an observer.

Before beginning with the substance of the inquiry, Judge Lindsay also stated for the record that he, as the judge assigned to the master

---

[2]The court in ruling upon the motion stated: "You have asked for an evidentiary hearing. I indicated it may be a matter of semantics. I will provide a hearing, but it will be an inquiry, it will not be an evidentiary hearing. This is not a contentious matter between the District Attorney and the defendants. It's one where I have the obligation under *People* v. *Brown* [(1972) 26 Cal.App.3d 825 (102 Cal.Rptr. 518)] and *People* v. *Munoz* [(1974) 41 Cal.App.3d 62 (115 Cal.Rptr. 726)] to have a hearing, to make an inquiry into why appointed counsel is not satisfactory and not competent and not capable. It's not a hearing to determine the abilities of certain selected counsel, vis-a-vis the appointed counsel and as to who someone might suggest would be the more competent of those."

[3]The motion for disqualification was filed on October 20, 1976, and Judge Lindsay filed his answer nine days later. After the filing of points and authorities by petitioners and the county counsel, the challenge was heard by Clayton W. Horn, retired judge of the San Francisco Superior Court, on assignment. On November 12, 1976, Judge Horn denied the challenge, and a subsequent petition for relief by way of extraordinary writ was denied without opinion by the Court of Appeal.

criminal calendar, would neither preside at the trial nor rule upon any pretrial motions under Penal Code sections 995 and/or 1538.5.

As a final preliminary matter the court acknowledged its receipt of several documents filed since the last hearing by Attorneys Jordan and Weinglass, who were present in the courtroom, in which they characterized themselves as making a "special appearance" on the issue of their "reinstatement." The court rejected this characterization but filed the documents as if they had been prepared by petitioners themselves. The court also addressed itself to a letter from petitioners, dated November 24, 1976, in which it was indicated that Attorneys Jordan and Weinglass would appear specially on their behalf during the inquiry. Viewing this letter as a motion by petitioners to have Attorneys Jordan and Weinglass on a pro bono basis for purposes of the inquiry, the court denied it.

These preliminary matters disposed of, Judge Lindsay commenced the hearing proper by a review of the documents and considerations which he had relied upon in making his appointments of Attorneys Ballachey and Mintz. These included materials relating to the qualifications of all four of the attorneys in question, as well as transcripts of the prior proceedings in the matter. He then called upon petitioners to proceed with their presentation. At this point, however, Attorneys Mintz and Ballachey renewed the motion that the inquiry be conducted on petitioners behalf by Attorneys Jordan and Weinglass, reiterating the close contact of the latter attorneys with petitioners in other related proceedings, the willingness of the latter attorneys to appear on a pro bono basis for purposes of the inquiry, and the desire of petitioners to be represented by them. It was also indicated that Attorneys Jordan and Weinglass had prepared for the proceeding with petitioners and that Attorneys Mintz and Ballachey had not. The motion was again denied.

After reading into the record various further documents which the court considered relevant to its determination—some of which reflected Judge Lindsay's own research in the matter[4]—the court called upon petitioners to personally "outline to me the specific reasons and argument for discharge of appointed counsel." They proceeded to do so, each speaking at some length.

[4]Included among these were (1) a letter from the State Bar Board of Legal Specialization stating that Attorneys Mintz and Ballachey are certified criminal law specialists, and that Attorneys Jordan and Weinglass are not; (2) an order of limited disclosure relative to the applications for certification as criminal law specialists which Attorneys Mintz and Ballachey filed with the State Bar; (3) a copy of the Standards of Certification of the State Bar; (4) an agreement between the county and the local bar

In general, their presentations emphasized two basic factors—of which one depended on relatively objective considerations while the other was more subjective in aspect. The first of these hinged upon the fact of petitioners' prior representation by Attorneys Jordan and Weinglass in related criminal proceedings, all concerning petitioners' alleged activities as members of the so-called Symbionese Liberation Army. It was pointed out that many of the issues and witnesses to be involved in the instant proceeding were likewise involved in these prior cases, and that the familiarity of Attorneys Jordan and Weinglass with these matters would greatly facilitate their preparation for the instant case. It was also suggested that the prosecuting authorities to be involved in the trial of this matter had been actively preparing for it for some three years through the medium of a specially appointed team within the district attorney's office devoted to the investigation and prosecution of alleged members of the so-called Symbionese Liberation Army; the appointment of Attorneys Jordan and Weinglass, it was urged, would afford petitioners a "continuity of representation" similar to that enjoyed by the prosecution in these circumstances. The appointment of Attorneys Ballachey and Mintz, on the other hand, would provide no such "continuity." Moreover, as indicated in the declarations of those attorneys, the effort required by them to achieve a level of familiarity with the case comparable with that of Attorneys Jordan and Weinglass would entail considerable duplicative time and expense to the county —all of which could be avoided by the appointment of Attorneys Jordan and Weinglass pursuant to petitioners' request.

The second factor emphasized by petitioners, as indicated above, was more subjective in character. In the course of their extended relationship, petitioners asserted, and to some extent as a result of certain shared political and social perceptions, a sense of mutual trust and confidence had arisen between petitioners and Attorneys Jordan and Weinglass. In short, petitioners had come to regard those attorneys as true champions of their cause. To deprive them of this kind of counsel in favor of two "strangers" in whom they had no such confidence and trust, they argued, would be to deprive them of a true representation of their interests.

association relative to the appointment of counsel for indigent defendants in cases involving public defender conflicts; (5) all documents filed by Attorneys Ballachey and Mintz on petitioners' behalf since their appointment; (6) a list of interviews conducted by Attorneys Ballachey and Mintz with petitioners since their appointment; (7) documents relating to petitioners' representation by Attorneys Jordan and Weinglass in previous proceedings in federal court and in the Los Angeles Superior Court; and (8) a letter from the office of the State Attorney of Cook County, Illinois, relative to Attorney Jordan's role in the representation of certain criminal defendants in that jurisdiction.

In the course of the hearing petitioners also sought to present testimonial evidence in support of the above assertions,[5] but the court, adhering to its position that the taking of evidence had no part in the inquiry, refused to permit this. It did, however, permit the filing of a declaration by Attorney Ballachy and the making of an oral statement by Attorney Mintz in support of petitioners' position, indicating inter alia that it would be necessary for them and members of their respective firms to spend a substantial number of hours in order to bring their familiarity with the background and legal issues to the level then already attained by Attorneys Jordan and Weinglass. The matter was submitted.

On December 7, 1976, the court reaffirmed its prior order appointing Attorneys Ballachey and Mintz. Petitioners were then arraigned on the indictment.

A subsequent petition for a writ of prohibition and/or mandate was denied by the Court of Appeal, the court citing the case of *Drumgo* v. *Superior Court* (1973) 8 Cal.3d 930 [106 Cal.Rptr. 631, 506 P.2d 1007, 66 A.L.R.3d 984]. We granted a hearing for the purpose of determining the proper application of *Drumgo* to the circumstances of this case.

In *Drumgo* the petitioner and five other inmates of San Quentin Prison were charged by indictment with five counts of murder and various other serious felonies. The trial court, concluding that conflicts existed among the codefendants, determined that the public defender should be appointed to represent one of them and private counsel to represent each of the others. Prior to the date set for making the appointment the petitioner had requested and had been granted permission to consult with Attorney Richard A. Hodge, and following such consultation he requested the appointment of Attorney Hodge, who advised the court that he was then ready, willing and able to proceed. The court rejected the request and appointed instead a local attorney who had previously served under appointment by the court and who the court knew to be competent. The petitioner, in a subsequent motion to have the appointed attorney relieved and Attorney Hodge appointed in his place, represented that he lacked confidence in the appointed attorney and would not

---

[5]The witnesses sought to be presented included Attorneys Jordan and Weinglass and the deputy district attorney in charge of the prosecution—the latter to be examined, according to petitioners' offer of proof, on the level of prosecution effort and the period of preparation in this matter.

cooperate with him. The motion was denied, and the petitioner sought relief by way of mandate[6] in this court.

We denied relief, concluding that "petitioner has not met the heavy burden imposed in stating a claim for relief cognizable on mandate." (*Drumgo* v. *Superior Court, supra,* 8 Cal.3d at p. 933.) Adverting to the clear language of section 987 of the Penal Code,[7] we indicated that it is the function of *the court,* in the exercise of its sound discretion, to appoint counsel for an indigent defendant. This discretion, we pointed out, may not be limited or narrowed by the defendant's expression of preference for a particular attorney or his refusal to cooperate with the attorney assigned. Thus, we said, an indigent defendant may not "*force* selection of a particular attorney who, in the defendant's opinion, can provide the best representation." (*Id.,* at p. 934, italics added.) "If, as in this case, an indigent defendant who is necessarily represented by the public defender may not *select* the particular deputy who will represent him [citation], then an indigent defendant for whom assigned counsel must be appointed should likewise not be entitled to be represented by a particular attorney." (*Id.,* italics added.) The matter, we emphasized, "rests, as always, in the sound discretion of the trial court . . . ." (*Id.,* at pp. 934-935.)

Concluding that no abuse of this discretion had been demonstrated by petitioner Drumgo, we noted the paucity of the showing made by him at the time of his appointment. Thus, although "[p]etitioner had every opportunity to explain his lack of confidence [in the attorney appointed by the court], [t]he only justification even suggested, a lack of any knowledge of [the attorney], is patently inadequate. A clear inference to be drawn from the record is that petitioner would have made similar claims about any lawyer except Mr. Hodge. There is no claim of disagreement as to trial tactics or that [the appointed attorney] refused or was unable to act after the appointment. No basis for the lack of confidence and refusal of services, other than lack of a prior relationship, has ever been given. Under these circumstances, petitioner's claims are most unconvincing and fall far short of demonstrating an abuse of discretion by the trial court." (*Id.,* at p. 935.)

We reaffirm our basic holding in *Drumgo.* An indigent defendant's preference for a particular attorney, while it is to be considered by

---

[6]"Mandate is a proper remedy when the trial court does not properly appoint or substitute counsel." (*Drumgo, supra,* at p. 933.)

[7]Section 987 provides in relevant part that when the defendant desires but is unable to employ counsel, "*the court must assign counsel* to defend him." (Italics added.)

the trial court in making an appointment (see *Drumgo, supra,* at p. 935, fn. 3), is not a determinative factor *requiring* the appointment of that attorney—even in combination with other relevant factors such as the subject attorney's competence and availability.[8] As we have indicated, the matter rests wholly within the sound discretion of the trial court.

"Judicial discretion is that power of decision exercised to the necessary end of awarding justice based upon reason and law but for which decision there is no special governing statute or rule. Discretion implies that in the absence of positive law or fixed rule the judge is to decide a question by his view of expediency or of the demand of equity and justice. [Citation.] The term implies absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason. Discretion in this connection means a sound judicial discretion enlightened by intelligence and learning, controlled by sound principles of law, of firm courage combined with the calmness of a cool mind, free from partiality, not swayed by sympathy or warped by prejudice or moved by any kind of influence save alone the overwhelming passion to do that which is just. [Citation.]" (*People* v. *Surplice* (1962) 203 Cal.App.2d 784, 791 [21 Cal.Rptr. 826]; see also *People* v. *Rist* (1976) 16 Cal.3d 211, 219 [127 Cal.Rptr. 457, 545 P.2d 833]; *In re Cortez* (1971) 6 Cal.3d 78, 85-86 [98 Cal.Rptr. 307, 490 P.2d 819].) █ We now turn to the question whether the trial court's decision in the instant case was within the limits of the sound judicial discretion thus described.[9]

As a preliminary matter we place into proper perspective certain language in our *Drumgo* opinion which has been the source of some misunderstanding and confusion. There, after rejecting the petitioner's

---

[8] We find nothing in the intervening case of *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], which would lead us to reconsider this point. The fact that a state criminal defendant has a constitutional right, guaranteed by the Sixth and Fourteenth Amendments, to waive the assistance of counsel and represent himself at trial by no means indicates that a defendant who, neither wishing to represent himself or able to retain his own counsel, should have the right to call upon the state to provide counsel of his own choosing at public expense. (Cf. *Magee* v. *Superior Court* (1973) 8 Cal.3d 949 [106 Cal.Rptr. 647, 506 P.2d 1023]; *People* v. *Crovedi* (1966) 65 Cal.2d 199, 205-209 [53 Cal.Rptr. 284, 417 P.2d 868].)

[9] "Although it is well established that mandamus cannot be issued to control a court's discretion, in unusual circumstances the writ will lie where, under the facts, that discretion can be exercised in only one way." (*Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379]; see also *Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 579 [114 Cal.Rptr. 106, 522 P.2d 666]; *Mannheim* v. *Superior Court* (1970) 3 Cal.3d 678, 685 [91 Cal.Rptr. 585, 478 P.2d 17]; *Hilmer* v. *Superior Court* (1934) 220 Cal. 71, 73 [29 P.2d 175].)

contention that he had a right to the appointment of an attorney of his own choice and emphasizing that the matter of appointment was one within the sound discretion of the court, we went on to say: "[T]here can be no abuse of that discretion when the court appoints competent counsel who is uncommitted to any position or interest which would conflict with providing an effective defense." (*Drumgo, supra,* 8 Cal.3d at p. 935, fn. omitted.) This language, while facially consistent with the statement of an absolute rule, must be viewed in the context of its utterance. In *Drumgo* the sole basis upon which the petitioner urged the appointment of the attorney chosen by him rather than the one selected by the court was what we have adverted to above as the "subjective" factor—i.e., his trust and confidence in Attorney Hodge and his corresponding "lack of knowledge" of the appointed attorney. No other factors were advanced. Thus, we said, "[t]here is no claim of disagreement as to trial tactics or that [the appointed attorney] refused or was unable to act after the appointment. No basis for the lack of confidence and refusal of services, other than lack of a prior relationship, has ever been given." (*Id.*) In these circumstances, then, we concluded that the sole issue to be considered was that of the appointed attorney's competency. In so doing, however, we did not mean to indicate that in all cases, regardless of the circumstances, the appointment by the court of an individual meeting the minimum standards of competency effectively insulates the court's decision in this regard from all review. Such a suggestion, of course, would be in clear conflict with the fundamental holding of the case—to wit, that the appointment of counsel is a matter entrusted to the court's exercise of sound judicial discretion as that term is understood and applied.

Turning to the facts of the instant case, we have pointed out above that the factors before the court at the time of its decision included not only those of "subjective" character (i.e., considerations of asserted trust and confidence such as those involved in *Drumgo*) but also matters of a more "objective" nature. The most significant of these concerned petitioners' prior representation and assistance by Attorneys Jordan and Weinglass in related prosecutions arising out of petitioners' alleged activities as members of the so-called Symbionese Liberation Army.[10] This exper-

[10] In his declaration filed with the court Attorney Weinglass stated inter alia that he was appointed in October 1975 by the Los Angeles Superior Court to represent petitioner Emily Montague Harris in a proceeding brought on an eleven-count indictment involving in general the robbery of a Los Angeles sporting goods store; that that representation continued for approximately ten months, including numerous pretrial motions and a six-week trial, and concluded with sentencing in August 1976; that he currently represents both petitioners on appeal from that judgment; that his professional time has been almost exclusively devoted to the representation of the Harrises since

ience, it must be concluded, not only established a close working relationship between petitioners and Attorneys Jordan and Weinglass but also served to provide those attorneys with an extensive background in various factual and legal matters which may well become relevant in the instant proceeding—a background which any other attorney appointed to the case would necessarily be called upon to acquire. This conclusion, as indicated above, appears not only from the assertions of petitioners and Attorneys Jordan and Weinglass but also from the declarations of the appointed Attorneys Ballachey and Mintz, which indicate that substantial amounts of effort and time would be required on their parts to attain the necessary background.

Secondly, although the appointed attorneys in this matter did not go so far as to refuse their appointment or declare their inability to act effectively on petitioners' behalf, their vigorous support of petitioners' plea that they not be appointed is here a factor of considerable significance.[11] Again, while their position was based to some extent upon their observation of the trust and confidence reposed by petitioners in

October 1975; that in connection with his defense in the Los Angeles case it was necessary for him to coordinate facts and trial strategies with attorneys for eight other persons then and now subject to criminal proceedings for activities in connection with the so-called Symbionese Liberation Army, which activities were of some two years in duration and involved a large number of people; that many of the defense strategies and motions made in the Los Angeles proceeding will have to be renewed in modified form in the instant proceeding; that in the course of the Los Angeles prosecution he became familiar with vast amounts of documentary material involved in the case, including an F.B.I. report of over 800 pages concerning a part of the investigation, and that representation of petitioners in the instant case will also require familiarity with these materials; and that there will be many witnesses in common in the two cases.

The declaration of Attorney Jordan stated inter alia that in September 1975 she was appointed to represent Mrs. Harris in federal proceedings involving a charge of possession of firearms (26 U.S.C. §§ 5861(d), 5871); that she was subsequently requested by Mrs. Harris to represent her in the aforementioned Los Angeles proceedings and was instrumental in securing the services of Mr. Weinglass, who was ultimately appointed for this purpose; that she occasionally consulted with Mrs. Harris throughout the nine-month pretrial period in the Los Angeles proceedings and was considered by Mrs. Harris as one of her attorneys; and that "since September 1975 there has been an attorney-client relationship between [herself] and Mrs. Harris."

It also appears that Attorneys Jordan and Weinglass have familiarized themselves with the transcript in the federal case of *United States* v. *Hearst* (presently pending on appeal), in which the alleged victim of the aggravated kidnaping charged in the indictment was convicted of bank robbery and other federal offenses.

(Our recitation of the contents of the declarations of Attorneys Weinglass and Jordan is not to be construed as passing upon the relevancy or materiality at trial of evidence relating to matters to which reference is therein made.)

[11]In addition to their efforts in support of petitioners' position in the trial court, Attorneys Ballachey and Mintz filed a brief amicus curiae in the Court of Appeal in which they urged that the trial court had abused its discretion under *Drumgo* in appointing them.

Attorneys Jordan and Weinglass, they placed primary emphasis upon the fact of their relative unfamiliarity with the facts and legal issues involved and the necessity for their expenditure of considerable energy and time if they were to bring their level of familiarity with those facts and issues to a point comparable with that already reached by Attorneys Jordan and Weinglass.

■ In view of all of these factors we believe, after a thorough review of the entire record, that the trial court's refusal to appoint Attorneys Jordan and Weinglass to represent petitioners in the superior court proceedings herein,[12] and its appointment of Attorneys Ballachey and Mintz in their stead, amounted to an abuse of sound judicial discretion. Although the factors relied upon by the court—including its personal knowledge of the qualifications of the appointed attorneys and their certification as criminal law specialists—were of significant consequence, we find that they were heavily outweighed by what we have termed the "objective" considerations in support of the appointment of Attorneys Jordan and Weinglass. When we add to the balance, as we must, the factor of petitioners' personal preference based upon trust and confidence developed over a substantial period of time, only one conclusion is possible.

In summary, while we reaffirm today the basic holding of *Drumgo* that the court's discretion in the appointment of counsel is not to be limited or constrained by a defendant's bare statement of personal preference, we hold that when that statement of preference, timely made, is supported by objective considerations of the consequence here involved, and where there are no countervailing considerations of comparable weight, it is an abuse of sound judicial discretion to deny the defendant's request to appoint the counsel of his preference.

Let a writ of mandate issue directing respondent court to set aside its appointment of Attorneys Ballachey and Mintz to represent petitioners below and to undertake further proceedings relative to the appointment of counsel in accordance with the views set forth herein.

---

[12]We reject petitioners' contention that this case involves not the appointment of counsel in the superior court but the failure to "continue" in the superior court the appointment made in the municipal court by Judge Sweeney. "Upon the dismissal of the complaint . . . the magistrate's appointment of counsel ceased." (*People* v. *Combes* (1961) 56 Cal.2d 135, 145 [14 Cal.Rptr. 4, 363 P.2d 4]; see Witkin, Cal. Criminal Procedure (1963) § 137, p. 132.) Accordingly, we are not here concerned with a situation involving the removal of an attorney serving under a valid subsisting appointment. (Cf. *Smith* v. *Superior Court* (1968) 68 Cal.2d 547 [68 Cal.Rptr. 1, 440 P.2d 65].)

Tobriner, J., Richardson, J., and Thompson (Homer B.), J.,* concurred.

**MOSK, J.**—I concur in the order and in general with the well-reasoned rationale of the majority opinion.

However, I cannot agree with the express reaffirmation of the holding in *Drumgo* v. *Superior Court* (1973) 8 Cal.3d 930 [106 Cal.Rptr. 631, 506 P.2d 1007, 66 A.L.R.3d 1007]. There was in that case an abuse of discretion as patent as that involved herein.

When trial judges adopt an obdurate stance on appointment of counsel, as in this case and in *Drumgo,* there lurks behind their action an implication that because defendant is indigent and counsel is appointed rather than hired, the need for trust and confidence between attorney and client is less compelling. We analyzed that conception in our unanimous opinion in *Smith* v. *Superior Court* (1968) 68 Cal.2d 547, 561 [68 Cal.Rptr. 1, 440 P.2d 65]: "A superficial response is that the defendant does not pay his fee, and hence has no ground to complain as long as the attorney currently handling his case is competent. But the attorney-client relationship is not that elementary: it involves not just the casual assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney. This is particularly essential, of course, when the attorney is defending the client's life or liberty. Furthermore, the relationship is independent of the source of compensation, for an attorney's responsibility is to the person he has undertaken to represent rather than to the individual or agency which pays for the service."

In the instant case, I would make the same query I propounded in my dissent in *Drumgo* (8 Cal.3d at p. 936): how is the administration of justice served by the dogged insistence that defendants be denied the appointment of the qualified and willing attorneys of their choice? Finding no compelling state interest thus served, I reach the same conclusion as my colleagues in the majority.

Bird, C. J., concurred.

**CLARK, J.,** Dissenting.—Just four years ago this court held: "The appointment of counsel to represent an indigent rests, as always, in the sound discretion of the trial court, *and there can be no abuse of that*

---

*Assigned by the Chairperson of the Judicial Council.

*discretion when the court appoints competent counsel who is uncommitted to any position or interest which would conflict with providing an effective defense."* (*Drumgo* v. *Superior Court* (1973) 8 Cal.3d 930, 934-935 [106 Cal.Rptr. 631, 506 P.2d 1007, 66 A.L.R.3d 984].)

The attorneys appointed by Judge Lindsay are competent and have no conflict of interest. No one suggests the contrary. Therefore, we must either deny the writ or forthrightly overrule *Drumgo*. Believing *Drumgo* to have stated the proper standard for reviewing trial court discretion, I would deny the writ.