620 P.2d 300

STATE of Idaho, Plaintiff–Respondent,

v.

Melvin A. McCABE, Jr.,
Defendant–Appellant.

Nos. 13293, 13366 and 13405.

Supreme Court of Idaho.

Dec. 4, 1980.

Melvin A. McCabe, pro se.

Klaus Wiebe, Ada County Public Defender, Nicolas R. Ysursa, Boise, for defendant–appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Dep. Atty. Gen., Boise, for plaintiff–respondent.

SHEPARD, Justice.

This is an appeal by defendant–appellant Melvin A. McCabe, Jr. from a conviction of

first degree burglary and grand larceny and the sentences imposed therefor. We affirm.

McCabe appears *pro se* on this appeal and hence we set out in its entirety what he denominates the "issues" presented:

"I. Is Defendant entitled to Counsel?

II. Was Defendant's waiver of counsel made willingly, competently, and intelligently?

III. Did Defendant represent himself diligently conscientiously, and competently?

IV. Was Defendants right to a fair trial prejudiced by the States introduction of the tainted testimony of Donny and Kay Nelson?

V. Did the trial court error in failing to give an instruction on intent?

VI. Did the trial court error in giving a confusing and prejudicial instruction on reasonable doubt?

VII. Did the sentencing court abuse its discretion in sentencing defendant on the basis of information contained in the pre–sentence investigation report that was materially incorrect?

VIII. Did the sentencing court abuse its discretion in imposing a sentence upon defendant which was unduly harsh under the circumstances?"

McCabe was charged with first degree burglary and grand larceny as the result of a break–in at a Boise business establishment and the theft of some 700 pounds of frozen meat, the value of which was approximately $1,000. McCabe lived with his sister and her husband, Donny and Kay Nelson, who were charged with receiving stolen property. The Nelsons allegedly sold a portion of the stolen meat to a third party. A portion of the stolen meat was found in the McCabe–Nelson residence, along with a shoe which belonged to McCabe and which matched a footprint found at the crime scene.

Both Donny and Kay Nelson were convicted of receiving stolen property and Kay Nelson was placed on probation, a condition of which was that she testify at McCabe's upcoming trial. The sentencing of Donny Nelson was deferred until the completion of the McCabe trial, at which time he also was placed on probation. Following McCabe's trial, at which Donny and Kay Nelson testified against McCabe, the jury returned a verdict of guilty, judgment of conviction was entered, and McCabe was sentenced to an indeterminate term not to exceed ten years.

McCabe's first three issues on appeal, although not completely articulated, appear to raise questions of competency of counsel and his right and ability to replace his appointed counsel with other counsel of his choice.

■ It is clear McCabe was entitled to appointed counsel. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). It is also clear that the office of the public defender in Ada County was appointed as counsel for McCabe. It is also clear that a defendant is entitled to reasonably competent assistance of an attorney acting as his diligent, conscientious advocate. *State v. Tucker,* 97 Idaho 4, 539 P.2d 556 (1975); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Prior to trial, McCabe had moved for the appointment of a substitute attorney and a hearing was held thereon. Counsel for McCabe furnished an affidavit dealing with all facets of the work on the case which counsel had performed up to the time of that hearing. Thereafter, the trial court ruled that McCabe was receiving the assistance of competent counsel. We find nothing in the record to indicate any error in that ruling of the trial judge. The sole apparent basis for McCabe's desire for a substitute attorney was that his appointed counsel had discussed with him the advisability of entering a guilty plea and had not secured the appointment of an investigator.

■ As to McCabe's first assertion regarding counsel's recommendation of a plea of guilty, we find it unpersuasive. Indeed, following counsel's admitted investigation and preparation of the case, he might well have been derelict in failing to so advise his client in the hopes of entering into a plea bargain for the reduction of charges, reduc-

tion of sentence, or other possible benefits. As to McCabe's second assertion regarding the appointment of an investigator, we likewise find it unpersuasive. As to the desirability or necessity for the appointment of an investigator, McCabe indicates only that such appointment was needed to find facts to impeach the credibility of the Nelsons. The record further indicates McCabe's inability to furnish counsel with any information or leads upon which such investigator could operate. In sum, we find no abuse of discretion by the trial court in failing to appoint substitute counsel for McCabe.

McCabe's contentions appear to resolve themselves into a format that because his appointed counsel advised a plea of guilty, counsel could have had no confidence in presenting defendant's case at trial. The conclusion does not follow and the record at trial clearly demonstrates otherwise. Likewise, mere lack of confidence in otherwise competent counsel is not necessarily grounds for substitution of counsel in the absence of extraordinary circumstances. *State v. Wozniak*, 94 Idaho 312, 486 P.2d 1025 (1971); *State v. Pepperling*, 582 P.2d 341 (Mont.1978). We find no such extraordinary circumstances in the case at bar.

Following the denial of McCabe's motion for substitute counsel, McCabe then elected to proceed at trial *pro se*. McCabe asserts that his decision to waive the assistance of counsel was not made willingly, competently and intelligently. We disagree. The record demonstrates that the trial judge repeatedly and meticulously sought to dissuade McCabe from his decision to waive counsel. The trial judge advised McCabe of the dangers of attempting to represent himself and present his defense in a criminal trial. When McCabe indicated he was adamant in his decision, the trial court attempted to persuade McCabe to allow counsel to sit with and advise him during the course of the trial. That suggestion was also rejected by McCabe. We hold the record clearly establishes a knowing and intelligent waiver of counsel by McCabe. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). Just as an indigent criminal defendant has a right to appointed counsel, he also has the right to reject such representation and conduct his own defense. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

McCabe next contends that the testimony of Donny and Kay Nelson was "tainted" since they were "accomplices" and since the execution of their sentences for the crime of receiving stolen property was contingent upon their testifying favorably to the prosecution and against McCabe at the trial of McCabe. The record indicates evidence that the crimes of grand larceny and burglary had been completed prior to the involvement or awareness of the Nelsons. At best, then, the Nelsons were accessories after the fact, but were not accomplices within the meaning of the statute requiring corroboration of their testimony. *State v. Murphy*, 94 Idaho 849, 499 P.2d 548 (1972). Even assuming *arguendo* that Nelsons were accomplices and that therefore there was a need for the corroboration of their testimony, the record demonstrates ample corroboration therefor.

As to McCabe's assertion that the Nelsons, as a condition of probation, were required to testify adverse to McCabe at trial, the record demonstrates otherwise. The Nelsons were only required to testify with no agreement as to the content of their testimony. The promise of leniency in exchange for testimony which is a full, fair and accurate account of the witness's knowledge of facts surrounding the crime is permissible. *People v. Lyons*, 50 Cal.2d 245, 324 P.2d 556 (1958); *Franklin v. State*, 577 P.2d 860 (Nev.1978).

We have reviewed and considered the remaining assignments of error relating to instructions and abuse of discretion in sentencing and find them to be without merit. The conviction and sentence are affirmed.

DONALDSON, C. J., and BAKES and McFADDEN, JJ., concur.

BISTLINE, Justice, concurring specially.

My concurrence in the result which the Court reaches is with considerable reluctance, and given under the compulsion of one of our recent decisions.

McCabe's primary assignment of error on his appeal is that he was denied his constitutional right to the aid of competent counsel. If ever a man needed the aid of counsel, McCabe did. He faced going to trial with before–hand knowledge that both his sister and her husband had given written statements implicating him as the sole culprit involved in the burglarizing of the meat market, as a result of which they were charged with possession only. Both had received a degree of leniency in return for their promises to testify against McCabe at trial. McCabe was but 21 years of age and with only rudiments of any formal education. He was forced to prepare for trial from within the confines of the state penitentiary; he was denied the aid of an investigator to help him with his case–which he saw primarily would entail an attempt to discredit the state's witnesses against him. He had just recently pled guilty to a felony in Idaho in another county. He did not know enough to contend that his sister and her husband–if accomplices–could not on their testimony alone convict him. He quite apparently did not know at sentencing that any sentence awarded him would be consecutive to that which he was serving, unless the court specifically made it concurrent.

As pointed out in the opinion, McCabe initially was furnished with counsel from the Ada County Public Defender's Office. Counsel who represented him at the preliminary hearing did, in my opinion based upon a careful review of the record, an admirable job in keeping out of evidence at that hearing the two written statements above referred to, that of the sister and her hus-

band.[1] The record shows, however, that one of McCabe's complaints against the efforts of his counsel was that counsel had failed to object to such evidence. As one might suspect would be the case where a layman tries to understand court proceedings, most of McCabe's complaints were, like this one, based upon misunderstanding and ignorance, and a deep–seated and abiding conviction that his sister and her husband, admittedly implicated to some extent in the purloining or appropriating of the packaged beef, were railroading McCabe off to the penitentiary.

The appeal record shows that the first matter in this criminal proceeding which was laid before Judge Newhouse, in district court, was McCabe's own motion, pro se, for appointment of substitute counsel. McCabe's motion was specifically "for the appointment of substitute counsel outside the office of the public Defender." Judge Newhouse, in my opinion, tried every conceivable approach in a sincere effort to persuade McCabe to stay with counsel who had up until then represented him. He eventually denied the motion.

A hearing was held on the motion, with McCabe both testifying and arguing in support of his motion. He was cross–examined by the prosecuting attorney–with neither McCabe nor his public defender counsel making any objection thereto. The prosecutor argued against substitution of defense counsel, mentioning that a firm trial date had been set. But, basically, the prosecutor argued that *he* didn't see any justification for McCabe's motion–and that he, the prosecutor, was aware that defense counsel had "done quite a bit in terms of investigating the case." The prosecutor explained that it was the type of work that isn't reflected in the record. The prosecutor concluded that McCabe simply didn't like to be told the basic facts of life as to

1. Neither the sister nor her husband testified at the preliminary hearing. The prosecutor contended that their signed extrajudicial statements were admissible on the basis of an exception to the hearsay rule, being declarations against penal interest, and admissible as statements of codefendants–said by the prosecutor

to be admissible at preliminary hearing, but under the prohibition of the Bruton Rule, not admissible at trial. McCabe obviously thought that the marking of the two statements as exhibits was equivalent to their being admitted–which the magistrate declined to do.

the state of the evidence against him. McCabe's reply to that and what followed is quite apparently that which led to his ending up without any counsel, whereas he had only sought to have new counsel:

"THE DEFENDANT: This is getting to be a funny little deal here. Like I came in here one time and heard you guys laughing in the back and stuff like that about my case, him saying it was all he's relying is my sister and my brother-in-law's testimony. And I just have a feeling he's afraid—you guys are going to give me somebody that will walk all over him and prosecuting me.

"But if the judge won't grant me this motion, I'll just go pro se and do the best of my ability. And I ain't—I don't know nothing about the law. But I'll give it a try. I feel I can do myself better defending myself than I would putting it in somebody's else's hands that don't know—that I don't feel know what they're doing.

"THE COURT: Mr. McCabe.

"Mr. Howen, anything further you'd like to say?

"MR. HOWEN: Well, Judge, he's interjected a second matter now, whether he should be able to pro se to represent himself. My experience is I think that's a very foolish move. But ultimately, it's his choice.

"THE DEFENDANT: It's not my choice.

"MR. HOWEN: Well, Your Honor, it's either the defendant's choice if he wants to be represented by appointed counsel or he wants to represent himself. To me, it doesn't make any difference. I'll present my case one way or the other.

"But I think that the motion for appointment of substitute counsel, that there are neither any grounds to support that motion. I would urge the Court to deny it.

"THE COURT: Well, Mr. McCabe, I'll give you the Court's reaction to this.

"I haven't heard any testimony here at all that Mr. Trimming hasn't represented you properly. I would point out to you the following: It isn't too new in the law that we have court–appointed counsel. Actually, that's only been here in the last ten years or so that counsel was appointed.

"THE DEFENDANT: I understand that.

"THE COURT: And the county has set up a large public defender budget. And the public defender ... is representing you in this case.

"If I go out and find substitute counsel without adequate reason or cause, why, it costs the county a lot of money. And so I'm going to deny your request in this matter. I can't see that that's ground for that."

Here, then, was where McCabe, seeking only substitution of counsel, seemed to sense the direction which the court was taking: either he would remain represented by counsel who had been representing him, or he would go it alone, which he was not qualified to do, and which he recognized. He made it quite clear indeed that he did *not* want to represent himself, and made it as clear as he could that he did not have any confidence in counsel representing him.

At first blush it was my thought that Judge Newhouse erred in failing to give any consideration to the possibility of asking the public defender's office to assign to McCabe some other attorney in whom McCabe might have confidence. But, on another review of the appeal record, my attention fell on that part of McCabe's motion which I hereinabove quoted, wherein he specifically asked for new counsel other than from the public defender's offices. Judge Newhouse was cognizant of this, and painstakingly explained to McCabe that the public defender's office was funded with public monies, and that to hire counsel from outside of that office was an expense which he thought unjustified, especially in light of the showing made by McCabe in attempting to demonstrate his unwillingness to continue with assigned counsel. I prefer to believe that the judge would have considered asking for someone else from the public defender's office except for the restrictive language of McCabe's motion.

McCabe, in turn, not a lawyer, and with no training in the law whatever, had drawn his own motion. Earlier, having sought new counsel prior to Judge Newhouse's assignment to his case, McCabe had been told by another district judge:

"I would just inform you, Mr. McCabe, if you do [have any problem with counsel representing him], your choices are rather limited. This Court does not get itself in the position of picking and choosing which member of a firm of public defenders represents you. That's really an internal matter. So really *your only choice is limited to representing yourself or having the attorney they choose to represent you* unless the Court can determine that there is significant enough of a conflict of interest that just isn't caused by your dislike of one attorney over another such that it would require the Court to appoint you independent counsel." (Emphasis added.)

There is no reason so far as the record shows to believe that Judge Newhouse knew that the foregoing admonishment had been delivered to McCabe. What was told McCabe serves to explain his asking for counsel outside the office of the public defender. He thought that he had to do so. And, of course, he had acted pro se in preparing and arguing his motion—which would be the first in a series of mistakes and omissions which would befall him in undertaking his own representation. But the fact does remain that McCabe did restrict his motion, and it is not unlikely that notwithstanding the protestations and argument of the prosecuting attorney, Judge Newhouse otherwise might have sent word to the public defender's office to try to fit McCabe with another attorney in whose *desire*—not ability–he had not lost confidence.

It is at this point that the Court's opinion is not tailored to my own views–when we consider the request for new counsel in the light of *confidence* gone asunder–for which reason I say that my concurrence has been given with much hesitation, and only under the compulsion of this Court's holding in *State v. Sima*, 98 Idaho 643, 570 P.2d 1333

(1977), that a criminal defendant acting in his own behalf is held to the same standards as a licensed practicing attorney of the state. McCabe, although he had counsel available, and counsel who for certain would have helped him with his motion for substitution of counsel, apparently chose to draft it on his own, and therein, and only therein, can be said to be the cause of his own undoing, leading to his being deprived of his constitutional right to counsel.

*Drumgo v. Superior Court*, 8 Cal.3d 930, 106 Cal.Rptr. 631, 506 P.2d 1007, cert. denied 414 U.S. 979, 94 S.Ct. 272, 38 L.Ed.2d 223 (1973), is, of course, authority for the proposition that McCabe may not pick and choose as respects who will be his attorney. For my part, however, I would prefer that this Court accept the reasoning of the dissent in that case. Being unable to so persuade any other members of the Court, I can only express the view that in time most jurisdictions will accept the *Drumgo* dissent, and later California cases seem to bear out that prophecy.

The *Drumgo* majority said this:

"The appointment of counsel to represent an indigent rests, as always, in the sound discretion of the trial court, and there can be no abuse of that discretion when the court appoints competent counsel who is uncommitted to any position or interest which would conflict with providing an effective defense. The record fails to demonstrate or even to suggest in any way an abuse of discretion based on Mr. Breiner's competency." *Id.* 106 Cal. Rptr. at 634, 506 P.2d at 1010 (footnote omitted).

Drumgo's claim that he lacked *confidence* in appointed counsel was said to "fall far short of demonstrating an abuse of discretion by the trial court." *Id.* 106 Cal.Rptr. at 634, 506 P.2d at 1010.

The *Drumgo* dissenters, Justices Tobriner and Mosk, showing more concern for the confidential essence of the lawyer–client relationship than did their brethren, first stated, citing *Smith v. Superior Court*, 68 Cal.2d 547, 68 Cal.Rptr. 1, 440 P.2d 65 (1968):

"Effective advocacy involves more than vigor, experience and familiarity with the law. The attorney–client relationship contemplates trust and mutual cooperation, particularly when the attorney is defending the client's liberty." 106 Cal. Rptr. at 636, 506 P.2d at 1012.

The following, a part of which was quoted by the dissenters in *Drumgo*, was stated by a unanimous court in *Smith*.

"Nevertheless we must consider whether a court–appointed counsel may be dismissed, over the defendant's objection, in circumstances in which a retained counsel could not be removed. A superficial response is that the defendant does not pay his fee, and hence has no ground to complain as long as the attorney currently handling his case is competent. *But the attorney–client relationship is not that elementary: it involves not just the casual assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney.* This is particularly essential, of course, when the attorney is defending the client's life or liberty. Furthermore, the relationship is independent of the source of compensation, for an attorney's responsibility is to the person he has undertaken to represent rather than to the individual or agency which pays for the service. (See generally, California Criminal Law Practice (Cont. Ed.Bar 1964), § 1.46, pp. 38–39.) It follows that *once counsel is appointed* to *represent* an indigent defendant, whether it be the public defender or a volunteer private attorney, *the parties enter into an attorney–client relationship which is no less inviolable than if counsel had been retained.* To hold otherwise would be to subject that relationship to an unwarranted and invidious discrimination arising merely from the poverty of the accused." 68 Cal.Rptr. at 10, 440 P.2d at 74 (emphasis added) (footnote omitted).

The California Supreme Court "adhered" to its *Drumgo* holding in a case arising in an almost identical context, *Harris v. Superior Court*, 19 Cal.3d 786, 140 Cal.Rptr. 318,

567 P.2d 750 (1977). The court declared itself to be reaffirming its basic holding in *Drumgo*, stating that "the matter rests wholly within the sound discretion of the trial court." *Id.* 140 Cal.Rptr. at 324, 567 P.2d at 756. However, the court observed that it was first necessary to "place into proper perspective certain language in our *Drumgo* opinion which has been the source of some misunderstanding and confusion." *Id.* 140 Cal.Rptr. at 325, 567 P.2d at 757. *Drumgo* was thereupon narrowed to become a case wherein:

"[T]he sole issue to be considered was that of the appointed attorney's competency. ... we did not mean to indicate that in all cases, regardless of the circumstances, the appointment by the court of an individual meeting the minimum standards of competency effectively insulates the court's decision in this regard from all review. Such a suggestion, of course, would be in clear conflict with the fundamental holding of the case–to–wit, that the appointment of counsel is a matter entrusted to the court's exercise of sound judicial discretion as that term is understood and applied." *Id.* 140 Cal.Rptr. at 325, 567 P.2d at 757.

An abuse of sound judicial discretion was found. *Id.* 140 Cal.Rptr. at 326, 567 P.2d at 758. Objective considerations requiring that holding in *Harris*, as opposed to *Drumgo*, were said to be found in the matter of the lawyer–client relationship, and the necessity for client confidence. *Id.* 140 Cal. Rptr. at 326–27, 567 P.2d at 758–59. Justice Clark dissented, solely on the basis that the court should either forthrightly overrule *Drumgo*, or on the basis of that case uphold the trial court's exercise of discretion. Justice Mosk, with one other justice concurring with him, concurred, pointing out, as did Justice Clark, that abuse of discretion in *Drumgo* was as patent as that in *Harris*:

"When trial judges adopt an obdurate stance on appointment of counsel, as in this case and in *Drumgo*, there lurks behind their action an implication that because defendant is indigent and counsel is appointed rather than hired, the need for

trust and confidence between attorney and client is less compelling." *Id.* 140 Cal.Rptr. at 327, 567 P.2d at 759.

Just this year the California Supreme Court again had occasion to reconsider *Drumgo* and *Harris* in *People v. Chavez*, 26 Cal.3d 334, 161 Cal.Rptr. 762, 605 P.2d 401 (1980) (*Drumgo* and *Harris* are discussed at 407–08). Those cases bear some dissimilarity to McCabe's situation in that the indigent defendants in each had specific counsel in mind who would represent them, but the superior court nonetheless made other appointments. As will be noted, however, for the point of law with which we are here concerned, the *Chavez* opinion as I read it abandons the *Drumgo* holding in favor of that which was said in *Harris*, insofar as *Drumgo* had held that judicial review ended with a finding that the trial court had appointed "competent" counsel:

> "Although one passage in *Drumgo* intimated in dictum that an abuse of discretion in the appointment of counsel could never be established 'when the court appoints competent counsel who is uncommitted to any position or interest which would conflict with providing an effective defense' (fn. omitted) (8 Cal.3d at p. 935, 106 Cal.Rptr. at p. 634, 506 P.2d at p. 1010), we subsequently reconsidered that language in *Harris v. Superior Court* (1977) 19 Cal.3d 786, 797, 140 Cal.Rptr. 318, 567 P.2d 750 and explained that in this context, as in other contexts, the boundaries of 'judicial discretion' cannot be embraced by an 'absolute rule' but must be judged by the circumstances of the particular case." 161 Cal.Rptr. at 768–69, 605 P.2d at 407–08.

Such being the current state of affairs in California, I would accept it as being the status of the law there that a criminal defendant's lack of confidence in his attorney, *i. e.*, a breakdown of the lawyer–client relationship, is at least equally as important as the attorney's lack of competence when the question arises on a defendant's motion for substitution of counsel.

A case from the California state system found its way into the Ninth Circuit Court of Appeals by way of federal habeas corpus proceedings. *Brown v. Craven*, 424 F.2d 1166 (1970). That court said that which to my mind logically appears to be applicable to McCabe. In reversing and directing a new trial or dismissal, Judge Ely wrote for the court:

> "[T]o compel one charged with grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever. *See Entsminger v. Iowa*, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Of course, a court is not required to provide an indigent accused with any particular attorney whom he may desire, and *we think that the state court might very properly have required Brown to accept the assistance of some other of the great number of competent attorneys associated with the Public Defender's office of Los Angeles County.*" 424 F.2d at 1170 (emphasis added).

Judge Kilkenny, specially concurring, wrote that the district court, on remand, should require the California Superior Court "to hold a hearing on whether appellant's objection to his legal representation was to the Public Defender's Office as a whole, or as to the individual attorney assigned by the Public Defender's Office." *Id.* at 1170.

In *Irvin v. State*, 584 P.2d 1068 (Wyo. 1978), the context in which the same question came up was slightly different. There the public defender made the motion for substitution of counsel for the defendant, apparently doing so at Irvin's behest. *Id.* at 1071. The district judge refused to do so, and on Irvin's petition for leave to proceed pro se, made generally the same inquiry into Irvin's waiver of his constitutional right to counsel as being intelligently and knowingly made as was here made by Judge Newhouse. Citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Wyoming court, in a 3–2 decision, upheld the trial court: "An

accused has the right to represent himself which must be regarded if he is competent to make that decision." 584 P.2d at 1072. "[W]e are satisfied that his claims and contentions, absent some evidence of incompetence or a conflict of interest, are insufficient to demonstrate an abuse of discretion ____." *Id.* at 1072.

Justice Rose, writing for the dissent, showed more concern for the criminal defendant forced to go to trial with an attorney in whom he has no confidence:

"The majority opinion requires a defendant to make a 'factual showing of good cause' in order that he be entitled to an appointment of substitute counsel. It then concludes that not only was there no showing of incompetence of counsel or a conflict of interest, but the defendant's representation of a lack of trust and confidence as between attorney and counsel, coupled with counsel's agreement that such trust and confidence are lacking, is not sufficient to fulfill the good-cause requirement. On the contrary, it is my judgment that the relationship of mutual confidence between a lawyer and his client is essential to a fulfillment of the lawyer's professional responsibility of furnishing effective assistance of counsel and that it cannot exist in circumstances such as these where both client and counsel agree that the requisite confidence and trust are absent.

"I find the law to be that where a defendant shows good cause why mutual confidence and trust between him and his attorney no longer exist, the court should substitute counsel. *Commonwealth v. Velasquez*, 437 Pa. 262, 263 A.2d 351, 353–354 (1970). In this case, Justice Roberts of the Pennsylvania Supreme Court was confronted with a situation where the defendant's counsel insisted the defendant plead guilty to first-degree murder, while it was defendant's wish that he be permitted to go to trial. Counsel, on the morning of the trial, moved for a continuance because of this difference which had culminated in a lack of confidence and trust between the attorney and client. The motion asked that the matter

be continued until other counsel could be employed and given adequate time to prepare the defense. The court denied the motion and the client pled guilty one–and–one–half hours later.

"Justice Roberts held that the plea could not stand because it was not freely given since the defendant had been placed in a position where he had no choice but to enter such a plea. The court said:

" 'It is true that a defendant, whether represented by retained or appointed counsel, cannot continually request new counsel when disagreements arise. But "[s]ince a relationship of mutual confidence between lawyer and client is important to the lawyer's fulfillment of his professional functions, where good cause is shown by the defendant why that confidence does not exist the court should substitute counsel." ABA Minimum Standards, Providing Defense Services 51 (1967). In the instant case "good cause" was certainly shown . . . .

" 'Since the court's failure to grant the motions for continuance and withdrawal effectively deprived appellant of any meaningful choice when he entered his guilty plea, appellant must be given a chance to plead over. The judgment of sentence of the Court of Quarter Sessions of Philadelphia County is vacated and the case remanded for a new trial.'

"Here, the defendant showed to the trial court that he had previously informed counsel that he did not want his representation. The attorney, in turn, responded that he did not want to represent the defendant. The defendant related that his attorney's only concern was to effect a plea to a lesser offense, while the defendant asserted his innocence and wished to go to trial with other counsel. The record further reveals that the defendant had previously dismissed this appointed counsel, charging him with incompetence. The defendant's attorney had attempted to withdraw, citing an inability 'to achieve the rapport, trust and

confidence of said Irvin necessary to the vigorous defense to which he is constitutionally entitled.' Surely, it can be understood by all why an appointed counsel would entertain a lack of trust and confidence with his client when the client had previously charged him with incompetence. I hasten to add that there is no showing that the attorney was in any way incompetent. However, once the public charge of incompetence is made by a client against his lawyer, in these circumstances, the question of the lawyer's actual competence is irrelevant to the issue of the existence of mutual confidence between lawyer and client. *Competence* is not the issue. *Trust* is the issue. Good cause for substitution is, indeed, shown when an attorney and his client agree that they have irreconcilable differences, resulting in a lack of rapport, trust and confidence. This is particularly true in a situation, like this case, where the defendant has not continually requested new counsel whenever disagreements arise. Compare, *Miller v. State*, Wyo., 560 P.2d 739 (1977).

"The majority attempts to buttress its position on the substitution of counsel, by concluding that the defendant made a 'knowing and intelligent waiver of the assistance of counsel.' This position might be tenable if we could ignore the circumstances leading up to the defendant's decision to act as his own attorney. I cannot escape the conclusion that the defendant was given no real freedom of choice to decide whether he wished to defend himself. It was like the options that were made available to the defendant in *Commonwealth v. Velasquez*, supra. There, the defendant's choice was to continue with a lawyer who wanted him to plead guilty against his will or be represented in trial in circumstances

where the attorney–client confidence had been destroyed. The plea evolving from these conditions was held faulty because it was not freely given.

"In the case at hand the defendant could either accept the representation of a lawyer in whom he had no confidence and who admittedly did not feel he could furnish the defense to which the defendant was constitutionally entitled–or–the defendant could go it alone unprepared. This was no choice at all!!" 584 P.2d at 1076–77.

Remarking on the same subject, the Supreme Court of the United States said in *Faretta*: "To force a lawyer on a defendant can only lead him to believe that the law contrives against him." 422 U.S. at 834, 95 S.Ct. at 2540. It is this exact thought which I find bothersome in McCabe's case. Unlike the scenario in some of the other cases, it is entirely clear that McCabe was not seeking substitution of counsel as a means of delaying his trial, but, as was true in the Pennsylvania case, *Commonwealth v. Velasquez*, 437 Pa. 262, 263 A.2d 351 (1970), cited in the *Irvin* dissent, "the defendant's choice was to continue with a lawyer who wanted him to plead guilty against his will or be represented in trial in circumstances where the attorney–client confidence had been destroyed." 584 P.2d at 1077 (Rose, J., dissenting).

In conclusion, I add only that it must be conceded that McCabe's predicament was not squarely like any of the other defendants of which mention has been made. McCabe did seek substitution of counsel, and did so well in advance of trial, as compared to some of the other cases. McCabe not only did not petition the court for leave to handle his case pro se, but pointedly said that he did not want to do so.[2] But, as

---

**2.** Following sentencing, McCabe made and presented a motion for reduction of his sentence. After the motion was denied, McCabe gained the court's attention in order to ask for the appointment of counsel to help him on his pending appeal to this Court. The colloquy which took place again served to demonstrate that McCabe was not a defendant seeking to

enter the practice of criminal law on his own behalf:

> (Mr.McCabe): "I don't have the foggiest idea what to do about my appeal. And if you could appoint somebody to represent me–I don't know what to do now. . . .
>
> "THE COURT: Well, Mr. McCabe, we have kicked this over fifteen times regarding your

mentioned earlier on, McCabe, even while he still had counsel, ventured into the practice, and erred in moving the court for counsel outside the office of the public defender, although he quite apparently was misled by the prosecutor and the court into believing that he had no right to ask that other counsel from the public defender's office be assigned to his case.

Many trial lawyers, even those with limited criminal practice, will not see this as being a close case. Were one to engage in speculation as to what the Supreme Court of the United States would do, an evaluation of the three opinions written in *Faretta* leads to the conclusion that the dissenters therein would find support from those who joined in the Court's opinion simply because here, unlike in *Faretta*, McCabe did not "clearly and unequivocally declare to the trial judge that he wanted to represent himself and did not want counsel." 422 U.S. at 835, 95 S.Ct. at 2541. But at the same time, as I have mentioned above, the rule of this Court (with which I find considerable disenchantment) as set forth in *State v. Sima*, 98 Idaho 643, 570 P.2d 1333 (1977), is that "[a] litigant [criminal] appearing pro se is held to the same standards and rules as one appearing with counsel." [3]

representation. There is no question that the file, the record, the transcript shows that I have offered you counsel. And you have refused it, not wanting the Public Defender's Office."

3. Cited as authority for the proposition was a single civil action, *Scafco Boise, Inc. v. Rigby*, 98 Idaho 432, 566 P.2d 381 (1977).

I entertain much doubt that such a rule is properly applicable to a criminal proceeding whereat, totally unlike a civil action, a trial judge is required to determine that such an election, to appear pro se and waive all of the constitutional rights attendant to the right to have representation by counsel, is being made knowingly and intelligently. California, in fact, since *Faretta*, now requires an examination into defendant's intellectual capacity, including a psychiatric evaluation where appropriate, before a trial judge makes the determination to allow a defendant to continue pro se. *See People v. Salas*, 77 Cal.App.3d 600, 143 Cal. Rptr. 755 (1978); *People v. Lopez*, 71 Cal. App.3d 568, 138 Cal.Rptr. 36 (1977).

I add that a postmortem review of *Sima* causes me to believe that this Court was in error in failing to observe that Sima with particularity stated in his notice of appeal that he was not furnishing a transcript of the trial testimony, preferring to restrict his appeal to a challenge of I.C. § 18–6710 as facially unconstitutional for vagueness, an issue which he had also presented on his appeal from magistrate court to district court.