[No. B077808. Second Dist., Div. Five. Feb. 17, 1994.]

ANDRE STEPHEN ALEXANDER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

902

## COUNSEL

Madelynn Kopple and Robert S. Gerstein for Petitioner.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent.

No appearance for Real Party in Interest.

## OPINION

**GRIGNON, J.**—Andre Stephen Alexander, defendant in a capital murder case, seeks a writ of mandate ordering respondent superior court to appoint

Attorney Madelynn Kopple, who acted as his court-appointed advisory counsel in the municipal court, to represent him in superior court proceedings.

The petition raises several issues concerning the appointment of trial counsel for indigent criminal defendants. The first issue is whether a superior court's refusal to appoint the attorney who represented defendant in municipal court constitutes a refusal to appoint the attorney, or a removal of the attorney. Second, we must determine the standard to be applied by the superior court in deciding whether to appoint the attorney previously appointed by the municipal court. Finally, we must decide whether, under the particular facts and circumstances of this case, respondent court abused its discretion in refusing to appoint Attorney Kopple to represent defendant. We conclude there was no abuse of discretion in this case, and accordingly deny the petition.

## FACTS AND PROCEDURAL BACKGROUND[1]

United States Secret Service Agent Julie Cross was killed on June 4, 1980. On September 30, 1992, defendant was charged by felony complaint with her murder. The complaint also alleged as special circumstances that defendant had been convicted of three prior murders on July 19, 1990,[2] the victim was a peace officer and the murder occurred in the commission of a robbery or an attempted robbery.

On October 1, 1992, defendant elected to proceed in propria persona in municipal court. On October 22, 1992, defendant was arraigned, defendant pleaded not guilty and Attorney Kopple was appointed as advisory counsel for defendant. At the time of her appointment as advisory counsel, appointments in capital cases were made on a rotational basis from the Indigent Criminal Defense Appointment Panel of the Los Angeles County Bar Association, and Attorney Kopple was included on the panel of attorneys available for appointment in capital cases. Between October 22, 1992, and June 1, 1993, Attorney Kopple billed the county in excess of $50,000 for advisory attorney fees.

On November 17, 1992, the board of supervisors approved a revised memorandum of understanding regarding the central district capital case

---

[1]We have taken judicial notice of the municipal court file, the superior court file, our file in a related petition (B079555) and the bills submitted to the county on this case by Attorney Kopple. We have also reviewed transcripts of the proceedings of respondent court held on August 2, 3, 9 and 16, 1993. The transcript of August 3, 1993, has been sealed.

[2]Defendant's three prior murder convictions (case No. A959177) were affirmed on appeal by this court on June 10, 1993 (case No. B054929). A petition for review was denied by the Supreme Court on September 1, 1993, and a remittitur issued on September 16, 1993.

appointments and fee schedule, which had been approved by the superior and municipal courts and the leadership of the Los Angeles County Bar Association. The memorandum of understanding provided for the establishment of a panel of attorneys from which appointments of attorneys in capital cases would be made on a rotational basis. The memorandum also provided for flat fee compensation of appointed capital case attorneys in four categories: category 1—$60,000; category 2—$90,000; category 3—$125,000; and category 4—$200,000. The flat fee was paid in periodic payments scheduled after the completion of certain tasks. For example, 15 percent of the category fee was payable when the appointment was accepted by counsel and 25 percent of the category fee was payable at the conclusion of the preliminary examination. An attorney first appointed in superior court was not entitled to receive the 25 percent of the category fee payable at the conclusion of the preliminary examination. Attorney Kopple was not included on this approved capital case panel.

On March 10, 1993, defendant informed the municipal court that he no longer wished to represent himself and requested Attorney Kopple be assigned as lead counsel to represent him. The municipal court judge informed Attorney Kopple that he could not appoint her to represent defendant as lead counsel. He informed her that he was first required to appoint the public defender, then the alternate defense counsel, and then an attorney from the capital case panel. Defendant's request for assigned counsel was withdrawn.

On May 24, 1993, defendant filed a motion to strike the prior murder conviction special circumstance on the ground that the prior convictions were constitutionally invalid. In the motion, defendant argued his right to due process had been violated by the loss or destruction of evidence, his right to due process had been violated by the nine-year preindictment delay and the trial court erred in finding a hearsay declarant to be unavailable and admitting his declaration against penal interest. The loss or destruction of evidence and preindictment delay were issues raised and resolved in the appeal which was pending at the time the motion was filed. The hearsay issue was apparently not raised on appeal.[3] The motion was denied.

On June 8, 1993, the public defender declared a conflict in writing, and on May 26, 1993, the alternate defense counsel declared a conflict in writing.

On July 7, 1993, Attorney Kopple informed a different municipal court judge that defendant was going to make a motion to substitute Attorney

---

[3]We have taken judicial notice of the opinion in case No. B054929. The case was argued and submitted on March 16, 1993, and the opinion was filed on June 10, 1993. (See fn. 2, ante.)

Kopple as lead counsel. Attorney Kopple informed the municipal court judge that both the public defender and the alternate defense counsel had declared a conflict. Attorney Kopple admitted that she was not on the approved panel of capital case attorneys, but told the municipal court judge that the judge was nevertheless required to appoint her because she was thoroughly familiar with the case and defendant desired her representation.

On July 13, 1993, the date of defendant's preliminary examination, Attorney Kopple was appointed by the municipal court to represent defendant as lead counsel. Attorney Kopple acted as lead counsel during defendant's preliminary examination, which took place over three and one-half court days. On July 19, 1993, defendant was held to answer.

On August 2, 1993, defendant was arraigned on a felony information before Judge Lance Ito in respondent's criminal master calendar court. At this time, Attorney Kopple stated: "Madelynn Kopple appearing with Mr. Alexander. We're ready. . . . [¶] Yes. We're ready for arraignment. I also filed a [Penal Code section] 987[, subdivision] (b) motion [for second counsel] which includes [Barry] Levin's signature. So I wonder if you could sign that. I think the court has that."

Attorney Kopple did not mention to Judge Ito that she was court-appointed counsel, nor did she request to be appointed by respondent court to represent defendant. Defendant was arraigned on the information, pleaded not guilty and denied the special circumstances allegations. The matter was assigned forthwith to Judge Charles Horan for further proceedings including trial. When the matter reached Judge Horan later that day, he referred the matter back to Judge Ito to clarify the status of counsel. Still later that same day, defendant again appeared before Judge Ito with Attorney Kopple.

Judge Ito stated that when the matter had been before him earlier, Attorney Kopple had not indicated she was court-appointed and, therefore, he had assumed she was retained. He then indicated that in light of the memorandum of understanding, he would exercise his discretion and not appoint Attorney Kopple to represent defendant in respondent court.

Attorney Kopple then filed with respondent court " 'Defendant's ex parte opposition motion to removal of attorney Madelynn Kopple, Pursuant to *Smith* v. *Superior Court*, (1968) 68 Cal.2d 547 [68 Cal.Rptr. 1, 440 P.2d 65].' " The motion was accompanied by a declaration of Attorney Kopple dated August 2, 1993, setting forth her qualifications, a declaration of defendant dated August 2, 1993, indicating his desire to have Attorney Kopple appointed because of her representation of him in municipal court

and his trust and confidence in her, the June 8, 1993 declaration of the public defender declaring a conflict, the May 26, 1993 declaration of the alternate defense counsel declaring a conflict, and a portion of the transcript of the preliminary examination in which the magistrate indicated her approval of the manner in which Attorney Kopple had conducted the preliminary examination. The motion was marked "Confidential To Be Sealed."

Judge Ito continued the matter to the next day. On August 3, 1993, defendant appeared before Judge Ito with Attorney Kopple in a closed proceeding. At the commencement of the hearing, Judge Ito indicated he had read the motion and reviewed the bills which had been submitted by Attorney Kopple. He also indicated he had spoken to several judges before whom Attorney Kopple had appeared as appointed counsel. Judge Ito expressed the impression he had received from other judges that Attorney Kopple's billing was "padded" and that she "charged for services that were not necessary and that [were] beyond the scope of [her] employment." Judge Ito mentioned certain specific examples of such alleged overbilling, including the $50,000 billed by Attorney Kopple as advisory counsel in municipal court in defendant's case. Judge Ito also mentioned an apparent double billing for paralegal services in defendant's case. Judge Ito gave Attorney Kopple an opportunity to explain each allegation. Judge Ito also gave defendant an opportunity to express his desires.

Defendant expressed some concerns he had with appointed counsel who had represented him in his previous murder case. He also reiterated that he had faith and trust in Attorney Kopple. Attorney Kopple gave an explanation for the allegations. With respect to overbilling as advisory counsel, Attorney Kopple explained that she had expended approximately 500 hours in assisting defendant with motions prepared by defendant, i.e., typing, "Shepardizing," editing and reviewing discovery. She also explained the apparent double billing for paralegal services.

Judge Ito took the matter under submission, but appointed Penelope Watson to represent defendant in the interim. The matter was continued to August 9, 1993. Attorney Kopple filed a supplemental letter brief on August 5, 1993, marked "confidential." On August 9, 1993, the matter was continued again to August 16.

Judge Ito prepared a written minute order dated August 13, 1993. In arriving at his decision, Judge Ito took into account the ex parte motion, the comments of defendant, the argument of Attorney Kopple, the supplemental letter brief dated August 5, 1993, and the transcript of the preliminary examination. Judge Ito stated the following. Attorney Kopple was not on the

approved panel of capital case attorneys; she had applied to be on the panel, but had been rejected.[4] Attorney Kopple had recognized this problem well in advance of defendant's arraignment in respondent court. She had not advised respondent court of her status and had not sought appointment. When confronted with the issue, she had a motion to oppose her nonappointment already prepared. Attorney Kopple's billing for the period she had been advisory counsel was excessive. Much of the billing was attributable to unauthorized preparation for trial. In addition, at great waste of public funds, Attorney Kopple had prepared a premature motion to strike the prior murder conviction special circumstance when the same issues were pending on appeal. During the period in which she had been acting as advisory counsel, Attorney Kopple had acted as a de facto primary attorney. This operated as a subterfuge on the court by allowing defendant in propria persona privileges, while at the same time allowing him to be represented by an attorney. There was no good cause to appoint Attorney Kopple in light of the overbilling, the lack of a prior relationship between defendant and Attorney Kopple and the absence of any reason why the services of Attorney Kopple might be unique. Defendant had merely stated a preference based on his trust and confidence in Attorney Kopple. Although defendant stated he would not cooperate with any other attorney, he contradicted that assertion by his willingness to have Attorney Levin appointed as cocounsel.

Judge Ito concluded: "This record should reflect that this court's decision not to appoint Kopple is not the application of an arbitrary fixed and routine policy to appoint from the court's list of approved death penalty case lawyers. This court accepted the filing of Kopple's objections, heard Kopple's initial arguments, set the matter for hearing the next day, conducted its own inquiries as to Kopple's qualifications, carefully considered Kopple's written motion and entertained argument and comment from both Kopple and Alexander. This court is well aware that its actions have a significant impact upon Alexander's right to counsel. (*Cannon* v. *Commission on Judicial Qualifications* (1975) 14 Cal.3d 678, 697 [122 Cal.Rptr. 778, 537 P.2d 898].) This court has considered the particular facts and interests involved in this case. Good cause exists to decline the appointment of Kopple. [¶] The court's appointment of Penelope Watson stands."[5]

On August 16, 1993, defendant appeared before Judge James Bascue, who read Judge Ito's minute order and ruled in accordance with that order. This

---

[4] Attorneys who had been included on the previous panel of attorneys eligible for appointment in capital cases were not required to apply for the new panel, but were automatically reviewed for inclusion on the new panel.

[5] Subsequently, this case was determined to be a category 3 case, i.e., $125,000. Attorney Watson accepted the appointment.

petition was timely filed. On September 7, 1993, we summarily denied the petition in an order stating that the petition lacked an adequate record and, in any event, respondent court did not abuse its discretion in refusing to appoint Attorney Kopple. Defendant filed a petition for review with the Supreme Court on September 17, 1993. On October 27, 1993, the Supreme Court granted the petition for review, transferred the matter to this court and ordered this court to issue an alternative writ of mandate. We issued an alternative writ on November 18, 1993, and set the matter for oral argument on December 8, 1993.

DISCUSSION

*Statutory Background*

A defendant charged by complaint with a felony must be taken before the magistrate of the court in which the complaint was filed. If the defendant desires the assistance of counsel and is unable to employ counsel, the magistrate must assign counsel to represent the defendant. (Pen. Code, § 859.)[6] The defendant must be arraigned by the magistrate. (§ 859a.) If the defendant pleads not guilty, a preliminary examination must be held. (§ 859b.) If it appears from the evidence presented at the preliminary examination that an offense has been committed and there is sufficient cause to believe the defendant is guilty, the magistrate must hold the defendant to answer. (§ 872.) Thereafter, an information must be filed in superior court. (§ 949.)

Counsel at the preliminary examination continues to represent a defendant who has been held to answer until the date set for the defendant's arraignment in superior court. (§ 987.1.) At the time of a defendant's arraignment in superior court, the judge must assign an attorney to represent the defendant if the defendant desires to be represented by an attorney and is unable to employ counsel. (§ 987.) Assignment of counsel in both the municipal court and superior court is governed by section 987.2.

In Los Angeles County, pursuant to section 987.2, indigent criminal defendants desiring but unable to afford counsel are represented by the public defender. If the public defender is unable to represent a defendant because of a conflict of interest, the alternate defense counsel is assigned to represent the defendant. If the alternate defense counsel is unable to represent a defendant because of a conflict of interest, private counsel is assigned.

"In counties that utilize an assigned private counsel system as either the primary method of public defense or as the method of appointing counsel in

---

[6]All further statutory references are to the Penal Code unless otherwise indicated.

cases where the public defender is unavailable, the county, the courts, or the local county bar association working with the courts are encouraged to do all of the following: [¶] (1) Establish panels that shall be open to members of the State Bar of California. [¶] (2) Categorize attorneys for panel placement on the basis of experience. [¶] (3) Refer cases to panel members on a rotational basis within the level of experience of each panel, except that a judge may exclude an individual attorney from appointment to an individual case for good cause." (§ 987.2, subd. (c).)

Assigned counsel are to be paid a reasonable sum for compensation and expenses. (§ 987.2, subd. (a).) The reasonable sum may be determined by contract between the court and attorneys after consultation with the board of supervisors. (§ 987.2, subd. (b).) "[T]he court shall first utilize the services of the public defender to provide criminal defense services for indigent defendants. In the event that the public defender is unavailable and the county and the courts have contracted with one or more responsible attorneys or with a panel of attorneys to provide criminal defense services for indigent defendants, the court shall utilize the services of the county-contracted attorneys prior to assigning any other private counsel. . . . In the interest of justice, a court may depart from that portion of the procedure requiring appointment of a county-contracted attorney after making a finding of good cause and stating the reasons therefor on the record." (§ 987.2, subd. (d).)

As of November 17, 1992, the municipal and superior courts in Los Angeles County and the county have contracted, in a memorandum of understanding with the Los Angeles County Bar Association, to provide a panel of approved attorneys to represent indigent defendants in capital cases in the central district for a fixed contract price. The memorandum provides: "No attorney shall be appointed to represent a defendant under this agreement in a capital case to be tried in the Central District of the Los Angeles Superior Court unless at the time of the appointment the attorney is on the approved Central District Capital Case Panel." Effective September 16, 1993, standby and advisory counsel are to be appointed and compensated on the same terms as lead counsel.

*Refusal to Appoint or Removal*[7]

■ Ordinarily, ". . . a judge enjoys less discretion in removing counsel than in appointing counsel." (*People* v. *Daniels* (1991) 52 Cal.3d 815, 846 [277 Cal.Rptr. 122, 802 P.2d 906].) The court appoints counsel for an

---

[7]We note that Attorney Kopple does not wish to represent defendant other than on a court-appointed basis. Thus, no issue relating to retained counsel of choice is presented.

indigent defendant in the exercise of its sound discretion. (*Harris* v. *Superior Court* (1977) 19 Cal.3d 786, 795 [140 Cal.Rptr. 318, 567 P.2d 750].) The involuntary removal of counsel on the other hand " 'may be justified, if at all, only in the most flagrant circumstances of attorney misconduct or incompetence when all other judicial controls have failed.' " (*People* v. *Daniels*, *supra*, at p. 846.)

■ Defendant contends that the superior court's rejection of a capital defendant's request for continued representation by the attorney who represented the defendant at the preliminary examination in municipal court is the involuntary removal of, rather than the refusal to appoint, counsel. Defendant cites no specific authority for his position other than general language from cases indisputably involving the removal of counsel. (E.g., *Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606, 614 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333]; *Smith* v. *Superior Court* (1968) 68 Cal.2d 547, 559 [68 Cal.Rptr. 1, 440 P.2d 65]; *People* v. *Crovedi* (1966) 65 Cal.2d 199, 213 [53 Cal.Rptr. 284, 417 P.2d 868]; *Alcocer* v. *Superior Court* (1988) 206 Cal.App.3d 951 [254 Cal.Rptr. 72]; *Roswall* v. *Municipal Court* (1979) 89 Cal.App.3d 467, 472 [152 Cal.Rptr. 337].) Defendant also concedes that in *People* v. *Chavez* (1980) 26 Cal.3d 334 [161 Cal.Rptr. 762, 605 P.2d 401], the Supreme Court treated a change of counsel upon a defendant's first appearance in superior court as a refusal to appoint, rather than a removal of counsel. Defendant argues, however, that the alternative of treating the change of counsel as a removal was not presented to the Supreme Court.

In *Chavez*, Jose Hector Chavez was arrested for and charged by felony complaint with aggravated assault. Chavez was represented by the public defender at the time of his arraignment in municipal court on January 26, 1977. On February 9, 1977, the public defender declared a conflict, and the municipal court appointed Attorney Joe Ingber to represent Chavez. Attorney Ingber represented Chavez at his brief preliminary examination eight days later. Chavez was held to answer and ordered to appear in superior court on March 4, 1977. Chavez appeared in superior court with the public defender who declared a conflict. When the superior court indicated it would assign private counsel to represent Chavez, Chavez asked if the superior court would appoint Attorney Ingber. The superior court responded that it would not appoint the counsel assigned by the municipal court because it had a routine policy of appointing new counsel for indigent defendants at the superior court level.

The Supreme Court, citing its previous cases of *Harris* v. *Superior Court*, *supra*, 19 Cal.3d 786 and *Drumgo* v. *Superior Court* (1973) 8 Cal.3d 930 [106 Cal.Rptr. 631, 506 P.2d 1007, 66 A.L.R.3d 984], treated the change of

counsel as a refusal to appoint Attorney Ingber and concluded the superior court "improperly adhered to a fixed policy of appointing its 'own' counsel in every case." (*People* v. *Chavez*, *supra*, 26 Cal.3d at p. 346.) It concluded "that the trial court abused its discretion in denying the request for the continued appointment of [Attorney Ingber] without affording [Chavez] an opportunity to explain what circumstances, if any, might warrant such continued appointment." (*Id.* at pp. 347-348.) Ultimately, the Supreme Court concluded the error was not prejudicial because no extended relationship between Attorney Ingber and Chavez existed, the attorney appointed in superior court was competent and prepared and there was no indication the defense was hampered by the refusal to appoint Attorney Ingber. (*Id.* at pp. 348-349.)

*Drumgo* v. *Superior Court*, *supra*, 8 Cal.3d 930 did not involve the question of the continued appointment by the superior court of an attorney who had been appointed by the municipal court to represent the defendant in municipal court proceedings; it involved the request of an indigent defendant in a capital case, at his first appearance in superior court following an indictment, for the appointment of a particular attorney who was willing and able to accept the appointment. The Supreme Court concluded the superior court did not abuse its discretion in refusing to appoint the attorney requested by the defendant.

*Harris* v. *Superior Court*, *supra*, 19 Cal.3d 786, however, did involve the question of the continued appointment in superior court of attorneys who had been assigned to represent defendants in municipal court. In *Harris*, two defendants were charged by felony complaint with various felony charges including aggravated kidnapping. After the public defender declared a conflict, the municipal court assigned two attorneys to represent the defendants in all municipal court proceedings. On the same date as the appointment of counsel, a grand jury returned an indictment. The felony complaint was subsequently dismissed and defendants appeared in superior court on the indictment. The superior court refused to appoint the two attorneys who had been appointed by the municipal court and appointed two different attorneys. The Supreme Court treated the issue as one of refusing to appoint, stating: "We reject petitioners' contention that this case involves not the appointment of counsel in the superior court but the failure to 'continue' in the superior court the appointment made in the municipal court . . . . Accordingly, we are not here concerned with a situation involving the removal of an attorney serving under a valid subsisting appointment." (*Id.* at p. 799, fn. 12.) In arriving at this conclusion, the Supreme Court relied to some extent on the fact that the dismissal of the complaint resulted in the cessation of the municipal court's appointment of counsel. (*Ibid.*) The Supreme Court ultimately concluded that the superior court abused its discretion in refusing to appoint the two previously appointed attorneys.

Although the Supreme Court did not directly decide the issue before us in *Chavez* and decided only a related but not identical issue in *Harris*, in our view, the fair inferences to be drawn from these cases is evident. Thus, we conclude that the refusal of a superior court to continue the appointment of an attorney who was assigned in municipal court and who represented an indigent defendant in the preliminary examination constitutes a refusal to appoint counsel and not the removal of counsel. Accordingly, the assignment of counsel in the superior court is to be made by the court in the exercise of its sound discretion.

This conclusion is not only consistent with the relevant Supreme Court authority, it is also consistent with the provisions of section 987.1, relating to continuity in representation by counsel at the preliminary examination. That section provides for continuity in representation by counsel at the preliminary examination until the date set for the defendant's arraignment in superior court.

This conclusion is also consistent with the actual practice of criminal law in this state. An attorney who has been retained to represent a defendant in municipal court does not consider himself or herself retained to represent the defendant in superior court. (See *People* v. *Stevens* (1984) 156 Cal.App.3d 1119, 1127-1129 [203 Cal.Rptr. 505]; *Mandell* v. *Superior Court* (1977) 67 Cal.App.3d 1, 3-5 [136 Cal.Rptr. 354].) The representation of a defendant who has been held to answer after a preliminary examination continues up to the date of arraignment in superior court. (See *People* v. *Baines* (1981) 30 Cal.3d 143, 149 [177 Cal.Rptr. 861, 635 P.2d 455]; *People* v. *Chavez, supra,* 26 Cal.3d at p. 348, fn. 4.) Thereafter, the issue of representation begins anew.

■ Of course, ordinarily it is the better practice to continue in superior court the appointment of the attorney assigned to an indigent defendant in municipal court. In fact, it is apparently the typical practice of respondent court to continue such appointments. As defendant points out, such a continuity of representation frequently will effect economy, efficiency and respect for an existing attorney-client relationship. These frequent benefits of continuity of representation, however, do not require an inflexible rule mandating continuity under all circumstances. Just as the Supreme Court in *People* v. *Chavez, supra,* 26 Cal.3d 334 found adherence to an inflexible policy of appointing new counsel in superior court to be inappropriate, so we find that adherence to an inflexible policy requiring continuance of the municipal court appointment in superior court to be inappropriate. The benefits of continuity of representation are factors to be taken into account by the superior court in exercising its discretion in appointing attorneys to represent indigent defendants.

Nor are we moved by defendant's refrain that capital cases are different. Appointment of counsel in capital cases is substantially similar to the appointment of counsel in other felony matters. Thus, in Los Angeles County, for example, all indigent defendants are assigned first the public defender, then the alternate defense counsel and finally private attorneys from an approved panel. The seriousness, complexity and difficulty of capital cases are merely other factors to be taken into account by a court when exercising its discretion in appointing counsel. Capital cases do not require a different rule.

*Abuse of Discretion*

As indicated previously, the appointment of or refusal to appoint a particular counsel for an indigent defendant is within the sound discretion of the trial court. We now turn to the question of whether respondent court in the instant case acted within the bounds of its sound discretion. (*Harris* v. *Superior Court, supra,* 19 Cal.3d at p. 796.)

" 'Judicial discretion is that power of decision exercised to the necessary end of awarding justice based upon reason and law but for which decision there is no special governing statute or rule. Discretion implies that in the absence of positive law or fixed rule the judge is to decide a question by his view of expediency or of the demand of equity and justice. . . . The term implies absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason. Discretion in this connection means a sound judicial discretion enlightened by intelligence and learning, controlled by sound principles of law, of firm courage combined with the calmness of a cool mind, free from partiality, not swayed by sympathy or warped by prejudice or moved by any kind of influence save alone the overwhelming passion to do what is just.' " (*Harris* v. *Superior Court, supra,* 19 Cal.3d at p. 796.)

It is well established that an indigent defendant, even in a capital case, may not force the trial court to appoint a particular attorney. (*Drumgo* v. *Superior Court, supra,* 8 Cal.3d at pp. 933-934.) The additional fact that the requested attorney is willing and available to represent the defendant does not compel the appointment of the requested attorney. (*Id.* at p. 934.) Moreover, appointment of the requested attorney is not compelled because the defendant unexplainedly lacks confidence in and refuses to cooperate with any attorney other than the requested attorney (*id.* at p. 935), or because the defendant has trust and confidence in the requested attorney. (*Ibid.*) However, these subjective factors should be taken into account by the trial

court in exercising its discretion. (*People* v. *Daniels, supra,* 52 Cal.3d at p. 843.)

In exercising its discretion, the trial court should take into account not only the foregoing subjective factors, but also objective factors such as previous representation of defendant by the requested attorney in the underlying or in any other proceeding, any extended relationship between defendant and the requested attorney, the familiarity of the requested attorney with the issues and witnesses in the case, the duplication of time and expense to the county of appointing an attorney other than the requested attorney, and the timeliness of the request. (*People* v. *Chavez, supra,* 26 Cal.3d at p. 346; *Harris* v. *Superior Court, supra,* 19 Cal.3d at pp. 797-799.)

■ Defendant asserts that the instant case is similar to *Harris,* arguing that respondent court abused its discretion in failing to appoint Attorney Kopple. Respondent court found, and we agree, that the facts of this case were more closely aligned with *Chavez* than with *Harris.*

The Supreme Court recently described its holding in *Harris* as follows: "In [*Harris,*] the superior court judge, after receiving a declaration of conflict from the public defender, appointed Attorneys Ballachey and Mintz to represent defendants, despite the defendants' request for appointment of Attorneys Susan Jordan and Leonard Weinglass. Our opinion noted not only the subjective considerations—defendants' long relationship with counsel Jordan and Weinglass, and their confidence in those attorneys—but also objective considerations. Defendants had been members of an organization known as the Symbionese Liberation Army, and the charged crimes, as well as other alleged crimes, arose from the activities of that organization. Jordan and Weinglass had represented the defendants in related prosecutions arising from these activities and had an extensive background in the factual and legal issues likely to arise in the case in question. We therefore found the judge's refusal to appoint them an abuse of discretion." (*People* v. *Daniels, supra,* 52 Cal.3d at p. 844.)

In *Daniels,* Jackson Chambers Daniels, Jr., was arrested and charged with the murder of two police officers who had attempted to arrest him following the affirmance on appeal of his conviction for bank robbery. Three special circumstances were alleged: multiple murder, murder committed for the purpose of avoiding arrest and murder of a peace officer. At the time of his arraignment in municipal court, Daniels requested that Attorney Andrew Roth be appointed to represent him. Daniels had been represented by the public defender during the trial of the bank robbery and was upset because the deputy public defender, who had represented him, had not told him he

had been negotiating for a position with the district attorney's office. Attorney Roth had represented Daniels in the appeal from the bank robbery conviction and was currently representing him in a federal district court petition for writ of habeas corpus on the ground of ineffective assistance of counsel. The municipal court judge denied the request and appointed the public defender.

The Supreme Court did not decide whether *Harris* was inapplicable and the appointment of private counsel was precluded where the public defender was available. (*People* v. *Daniels, supra*, 52 Cal.3d at pp. 844-845; cf. *Charlton* v. *Superior Court* (1979) 93 Cal.App.3d 858, 863 [156 Cal.Rptr. 107].) "The present case does not require us to decide that question. Unlike *Harris* v. *Superior Court, supra*, 19 Cal.3d 786, in which Attorneys Jordan and Weinglass had represented defendants on similar cases arising from the same alleged conspiracy, and thus had extensive experience and knowledge relating to the charged crime, in the present case Roth had represented [Daniels] only on the bank robbery appeal and on minor traffic matters, none of which had much relationship to the murder case at issue. . . . Under these circumstances the trial court was not required to appoint Roth to represent [Daniels]." (*People* v. *Daniels, supra*, at p. 845.)

In this case, certain factual matters are undisputed. Attorney Kopple had no extended relationship with defendant prior to her appointment as advisory counsel in municipal court. She acted as advisory counsel for defendant from October 22, 1992, until the commencement of the preliminary examination on July 13, 1993, a period of just under 10 months. During this approximate 10-month period, she billed the county for 500 hours at $100 per hour totalling approximately $50,000. A substantial portion of this 500 hours was spent assisting defendant with his appeal from the prior murder conviction (for which he had other appointed counsel), typing, editing and "Shepardizing" motions prepared by defendant, preparing a motion to strike the prior murder conviction special circumstance (raising issues already raised in the pending appeal), reviewing discovery and reading the voluminous transcript of the prior murder conviction trial which was then pending on appeal. After being appointed lead counsel, she represented defendant in a three-and-one-half-day preliminary examination.

Less than one month after being appointed advisory counsel on October 22, 1992, Attorney Kopple was not included on the new panel of approved capital case assigned attorneys. As early as March of 1993, she was informed by the municipal court that because she was not on the approved panel, she would not be appointed as lead counsel. In the face of this information, she withdrew defendant's request to have a lead attorney

appointed and continued as advisory counsel with defendant in propria persona. She was appointed as lead counsel in municipal court on July 13, 1993. At defendant's arraignment in superior court, defendant appeared with Attorney Kopple. She did not request to be appointed by the superior court. She did not mention that she was a court-appointed attorney. When called back before Judge Ito, she filed an already prepared opposition to respondent court's refusal to appoint her.

Thereafter, Judge Ito appointed Attorney Watson, who was on the approved panel, to represent defendant. No question as to Attorney Watson's competency has been raised. Judge Ito conducted an extensive hearing as to whether attorney Kopple should be appointed to represent defendant. Defendant was given every opportunity to explain what circumstances might warrant the continued appointment of Attorney Kopple. Attorney Kopple was given every opportunity to address Judge Ito's concerns relating to her billing practices. Judge Ito determined that Attorney Kopple had no extended relationship with defendant such as the attorneys in *Harris* had, had excessively charged the county for her legal services, had engaged in a subterfuge with defendant to enable him to receive in propria persona privileges while actually being represented by an attorney, and was not on the panel of approved capital case attorneys. For these reasons, Judge Ito refused to appoint Attorney Kopple.

We agree with Judge Ito that the facts of this case more closely represent the facts of *Drumgo*, *Chavez* and *Daniels* than they do the facts of *Harris*. The facts in support of the appointment of Attorney Kopple, when stripped to their essentials, are as follows: (1) defendant had trust and confidence in Attorney Kopple and desired that she represent him; (2) Attorney Kopple was willing and available to represent him; and (3) Attorney Kopple had represented defendant in the preliminary examination. There is no doubt that as a result of her representation of defendant in municipal court, Attorney Kopple was familiar with the factual and legal issues of defendant's case. However, much of her knowledge about the case was gleaned from performing inappropriate and unnecessary legal services at county expense.

Standing against these facts are the following: (1) Attorney Kopple had no extended relationship with defendant other than her representation of him in the instant case in municipal court; (2) Attorney Kopple was not on the panel of approved capital case attorneys; (3) Attorney Kopple had charged the county excessively for her legal services; (4) Attorney Kopple had not been completely forthright with the courts; and (5) Attorney Watson would be appointed at a flat fee after deducting the compensation ordinarily paid for the preliminary examination (i.e., 25 percent). We conclude that Judge Ito's

factual findings are supported by substantial evidence. Although the facts might also support contrary findings, it is not the job of an appellate court to substitute its findings for those of the trial court where the trial court's findings are supported by substantial evidence.

In light of the foregoing, we conclude respondent court did not abuse its discretion in refusing to appoint Attorney Kopple. Judge Ito did not, as did the superior court in *People* v. *Chavez, supra,* 26 Cal.3d 334, apply an inflexible policy of refusing to appoint as counsel attorneys not on the approved panel and, unlike the trial court in *Chavez,* he afforded defendant an opportunity to explain the circumstances justifying Attorney Kopple's appointment. Attorney Kopple had no extended relationship with defendant, as had the attorneys in *Harris,* and, like the attorney in *Chavez,* had simply represented defendant in municipal court. This is not sufficient to compel her appointment. We recognize that this is a complex capital case and the amount of preparation involved was substantially more than that required in the *Chavez* case. However, unlike *Chavez,* in this case there were a number of factors mitigating against Attorney Kopple's appointment. Respondent court weighed all the factors pro and con and arrived at a decision that was within its reasonable discretion.

## DISPOSITION

The alternative writ is discharged. The petition for writ of mandate is denied.

Turner, P. J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied March 10, 1994, and petitioner's application for review by the Supreme Court was denied May 19, 1994. Mosk, J., and Kennard, J., were of the opinion that the application should be granted.