[No. A127100. First Dist., Div. One. May 28, 2010.]

MICHAEL GRESSETT, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
THE PEOPLE et al., Real Party in Interest.

116

**COUNSEL**

Michael J. Kotin for Petitioner.

Meyers, Nave, Riback, Silver & Wilson and Joseph M. Quinn for Respondent.

Edmund G. Brown, Jr., Attorney General, and Peter E. Flores, Jr., Deputy Attorney General, for Real Party in Interest the People of the State of California.

Sharon L. Anderson, County Counsel, and Rebecca J. Hooley, Deputy County Counsel, for Real Party in Interest County of Contra Costa.

**OPINION**

**DONDERO, J.**—Petitioner, Michael Gressett, a former senior deputy district attorney in Contra Costa County, is the named defendant (hereafter defendant) in a criminal indictment charging four counts of forced sodomy (Pen. Code, § 286, subd. (c)(2)), four counts of forced sexual penetration (Pen. Code, § 289, subd. (a)(1)), two counts of forced rape (Pen. Code, § 261, subd. (a)(2)), one count of forced oral copulation (Pen. Code, § 288a, subd. (c)(2)), one count of false imprisonment (Pen. Code, § 236), and one count of making criminal threats (Pen. Code, § 422). By this petition for writ

of mandate (Code Civ. Proc., § 1085; *Drumgo v. Superior Court* (1973) 8 Cal.3d 930, 933 [106 Cal.Rptr. 631, 506 P.2d 1007] (*Drumgo*)), he challenges an order denying his request that Attorney Daniel J. Russo be appointed at county expense as his assigned counsel. (Pen. Code, § 987 et seq.)[1] He contends that he established good cause for the appointment.

Following our summary denial of the petition, the Supreme Court directed us to vacate our order and issue an alternative writ.[2] As will be seen, we now again deny the petition.

When the petition was initially filed in this court, defendant appropriately named and served the People of the State of California as real party in interest. (§ 987.05; *Sonoma County Nuclear Free Zone '86 v. Superior Court* (1987) 189 Cal.App.3d 167, 173 [234 Cal.Rptr. 357]; and see *Harris v. Superior Court* (1977) 19 Cal.3d 786 [140 Cal.Rptr. 318, 567 P.2d 750] (*Harris*).) His petition for review to the Supreme Court, however, was answered by the superior court, at the high court's invitation. When the matter was returned to this court, we named the County of Contra Costa as a real party in interest in addition to the People. Funds for payment of assigned counsel are to be paid out of the general fund of the county (§ 987.2, subd. (a)), so that the County of Contra Costa has a direct and special interest in the outcome of this writ proceeding.

The County of Contra Costa and the superior court have filed returns to the alternative writ, to which defendant has replied. (Cal. Rules of Court, rule 8.487(b).)[3] The Attorney General takes no position on the merits.

---

[1] Further statutory references not otherwise noted are to the Penal Code.

[2] " 'The Supreme Court's order directing that an alternative writ be issued constitutes a determination that, in the ordinary course of the law, the petitioner is without an adequate remedy.' [Citation.] It does not stand for the proposition that the Supreme Court has determined that petitioner was correct on the merits, or justified, but merely that extraordinary relief is the only adequate avenue for review." (*Bridgestone/Firestone, Inc. v. Superior Court* (1992) 7 Cal.App.4th 1384, 1389, fn. 4 [9 Cal.Rptr.2d 709].)

[3] In his reply to the returns to the alternative writ, defendant moves to strike the return of the superior court, objecting to the court's appearance. As the Supreme Court invited the direct participation of the superior court, and defendant earlier failed to object, we decline to strike the return and do not decide the propriety of the superior court's appearance. We note, however, that while nominally the respondent in a writ proceeding, the superior court ordinarily is a neutral party, with a duty to remain impartial. (*Curle v. Superior Court* (2001) 24 Cal.4th 1057 [103 Cal.Rptr.2d 751, 16 P.3d 166]; *Municipal Court v. Superior Court* (*Gonzalez*) (1993) 5 Cal.4th 1126, 1131 [22 Cal.Rptr.2d 504, 857 P.2d 325]; *James G. v. Superior Court* (2000) 80 Cal.App.4th 275, 280 [95 Cal.Rptr.2d 135].) Exceptions to this principle are infrequent, generally involving rulings as to which real party in interest "is not a real adverse party, has suffered no harm, or has no interest in the writ proceeding." (*James G. v. Superior Court, supra*, at p. 280.) The superior court also properly appears where its direct operating

## BACKGROUND

The crimes charged in the indictment are alleged to have occurred May 8, 2008. The indictment names a deputy district attorney as the alleged victim. The People are represented below by the Attorney General, the Contra Costa County District Attorney's Office being recused from the case. And, the members of the Contra Costa County Superior Court have also recused themselves. The challenged ruling was made by the judge assigned by the Chief Justice. (Cal. Const., art. VI, § 6.)

Defendant was originally charged by criminal complaint (§ 859) filed November 21, 2008. He was dismissed from the Contra Costa County District Attorney's Office following the filing of the complaint, and two private attorneys, Michael Cardoza and Daniel J. Russo (Russo), served as his counsel around that same time. The case did not proceed to preliminary hearing, however, as the Contra Costa County Grand Jury returned an indictment against defendant filed on October 19, 2009. (§§ 940–951.)

On August 17, 2009, prior to the filing of the indictment, defendant requested appointment of Attorney Russo as assigned counsel at public expense. (§ 987.2, subd. (d).) That motion was denied November 5, 2009, without prejudice. Among the reasons for the superior court's analytical decision were defendant's failure to prove his indigency, and the fact that the Contra Costa County Public Defender and the county's alternative defender had not declared themselves unavailable.

Subsequently, defendant was found eligible for the services of the public defender. Thereafter, that office and the alternative defender declared conflicts of interest. He was then referred to the Contra Costa County Criminal Conflicts Panel. The panel selected Attorney Michael J. Kotin, a retired chief assistant public defender of Contra Costa County, to represent him, and Attorney Kotin appeared with him on November 30, 2009. During this proceeding, Attorney Kotin acknowledged several times he was prepared to represent the defendant. However, on December 2, 2009, through Attorney Kotin, defendant once again moved to have Attorney Russo appointed as his assigned counsel. The renewed motion was denied December 7, 2009, the trial court again articulating the reasons for exercising its discretion. This petition followed.

## DISCUSSION

■ All parties agree that the right to select counsel of one's choice applies only to retained, not appointed, counsel. (*People v. Mungia* (2008) 44

procedures are challenged. (*Id.* at p. 281; and see, e.g., *Elkins v. Superior Court* (2007) 41 Cal.4th 1337 [63 Cal.Rptr.3d 483, 163 P.3d 160].)

Cal.4th 1101, 1122 [81 Cal.Rptr.3d 614, 189 P.3d 880]; see *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 151 [165 L.Ed.2d 409, 126 S.Ct. 2557].) Section 987.2 governs the assignment of counsel to represent criminal defendants unable to afford to employ an attorney. As relevant here, it provides: "[T]he court shall first utilize the services of the public defender to provide criminal defense services for indigent defendants. In the event that the public defender is unavailable and the county and the courts have contracted with one or more responsible attorneys or with a panel of attorneys to provide criminal defense services for indigent defendants, the court shall utilize the services of the county-contracted attorneys prior to assigning any other private counsel. Nothing in this subdivision shall be construed to require the appointment of counsel in any case in which the counsel has a conflict of interest. In the interest of justice, a court may depart from that portion of the procedure requiring appointment of a county-contracted attorney *after making a finding of good cause and stating the reasons therefor on the record.*" (§ 987.2, subd. (d), italics added.)

Defendant contends that he established good cause requiring the superior court to appoint Attorney Russo rather than a county-contracted conflicts panel attorney. In doing so, he relies primarily on *Harris* to argue that the superior court abused its discretion when it denied his motion.

■ "The appointment of counsel for indigent defendants under section 987.2 rests within the sound discretion of the trial court." (*People v. Horton* (1995) 11 Cal.4th 1068, 1098 [47 Cal.Rptr.2d 516, 906 P.2d 478].) "[I]t is the function of *the court*, in the exercise of its sound discretion, to appoint counsel for an indigent defendant. This discretion . . . may not be limited or narrowed by the defendant's expression of preference for a particular attorney . . . . The matter . . . 'rests, as always, in the sound discretion of the trial court . . . .' [Citation.]" (*Harris, supra*, 19 Cal.3d 786, 795.) We review the superior court's order for abuse of discretion. (*People v. Cole* (2004) 33 Cal.4th 1158, 1184–1185 [17 Cal.Rptr.3d 532, 95 P.3d 811].) "A court abuses its discretion when it acts unreasonably under the circumstances of the particular case." (*Id.* at p. 1185.) " 'Although it is well established that mandamus cannot be issued to control a court's discretion, in unusual circumstances the writ will lie where, under the facts, that discretion can be exercised in only one way.' [Citations.]" (*Harris, supra*, at p. 796, fn. 9.)

■ *Harris* and subsequent cases have set forth a number of factors the trial court may not disregard when exercising its discretion in ruling on a motion to appoint specified counsel. (*People v. Horton, supra*, 11 Cal.4th 1068, 1099.) ■ Initially, the request must be timely made, as it was in this case. (*Harris, supra*, 19 Cal.3d 786, 799.) Appointed defense counsel,

Attorney Kotin supports defendant's request, another factor that favors defendant's motion. (*Id.* at p. 798; see also *People v. Cole, supra*, 33 Cal.4th 1158, 1186.)

■ Although a defendant is not entitled to the services of a particular attorney at public expense (*Drumgo, supra*, 8 Cal.3d 930), the defendant's preference is nonetheless one factor to be considered. (*People v. Chavez* (1980) 26 Cal.3d 334, 347 [161 Cal.Rptr. 762, 605 P.2d 401].) Where, as here, the preference is based upon a relationship of trust and confidence in requested counsel, established by virtue of previous representation in related proceedings, the preference is significant, although "appointment of the requested attorney is not compelled because the defendant unexplainedly lacks confidence in and refuses to cooperate with any attorney other than the requested attorney [citation], or because the defendant has trust and confidence in the requested attorney." (*Alexander v. Superior Court* (1994) 22 Cal.App.4th 901, 915 [27 Cal.Rptr.2d 732], citing *Drumgo, supra*, at pp. 934–935.)

"In exercising its discretion, the trial court should take into account not only the foregoing subjective factors, but also objective factors such as previous representation of defendant by the requested attorney in the underlying or in any other proceeding, any extended relationship between defendant and the requested attorney, the familiarity of the requested attorney with the issues and witnesses in the case, the duplication of time and expense to the county of appointing an attorney other than the requested attorney, and the timeliness of the request." (*Alexander v. Superior Court, supra*, 22 Cal.App.4th 901, 916.)

Defendant strenuously likens his case to the defendants in *Harris*. He stresses the fact that he has developed trust and confidence in Attorney Russo during the 10 months that Russo was his retained counsel. (*Harris, supra*, 19 Cal.3d 786, 798; see also *id.* at p. 793; *People v. Chavez, supra*, 26 Cal.3d 334, 346.) He also argues that Russo does not frequently appear in Contra Costa County, pointing out that witnesses in the case will likely include members of the Contra Costa County District Attorney's and Public Defender's offices as well as members of the superior court bench, so a conflict of interest is less likely.[4] Nonetheless, defendant points to no evidence in the record that Attorney Kotin will be required to declare a conflict of interest because of his former employment in the Contra Costa County Public Defender's Office. Significantly, the record establishes that defendant and Attorney Kotin have a good

---

[4] In its return, the superior court requests that we take judicial notice (Evid. Code, §§ 452, subd. (h) & 459) of certain Web pages concerning Attorney Russo. We need not decide whether the pages are the proper subject of judicial notice. They were not before the superior court. We deny the request. (*Peterson v. Superior Court* (1995) 10 Cal.4th 1185, 1200, fn. 9 [43 Cal.Rptr.2d 836, 899 P.2d 905].)

professional relationship, and have known one another "for a long time." As Attorney Kotin explained, "I think there is mutual professional respect. . . . I think he's happy for me to be his lawyer and I'm happy to take the case." Kotin advised the trial court that he was ready, willing and able to handle this sensational case, even after the current public defender had recused the office based on conflict. Further, objectively considered, Attorney Kotin is amply qualified to handle the case, notwithstanding his support of defendant's preference.

The trial court was also required to consider whether failure to appoint Attorney Russo would necessitate substantial expense and duplication of effort. (*Harris, supra,* 19 Cal.3d 786, 799.) Either Attorney Kotin or Attorney Russo would be paid at an hourly rate set by the county.[5]

Defendant argues that appointment of any attorney other than Russo will require additional expense and duplication of effort. The County appears to have accepted this argument; however, we find it unsupported by the record. Attorney Russo represented in his declaration in the *Harris* motion that he has already reviewed existing discovery, listened to "countless hours of audio taped interviews," and has devoted 200 unpaid hours to the case.[6] Attorney Kotin explained that based upon the information provided to him that the discovery in the case was over 3,000 pages plus numerous tapes, he would anticipate spending 300 hours to become familiar with the case.

However, other than the statements noted above, nothing in Attorney Russo's declaration specified the nature of the work he had spent on the case, nor did he offer any other information concerning the number of paid hours and details of his work during the preceding 10 months of his retention. Further, Attorney Russo represented defendant as retained counsel only before the scheduled preliminary hearing—a hearing which never took place. Attorney Kotin's work will necessarily involve review of existing discovery

---

[5] As noted, we previously named the County of Contra Costa (County) as a real party in interest, and it has filed a return. County does not oppose the petition, noting that while "County has less ability to control costs incurred by private attorneys because, unlike County-contracted attorneys, private attorneys are not subject to County oversight, in the instant case these speculative costs are outweighed by the more likely savings. The private attorney requested by petitioner has agreed to work at the County-contracted rates going forward . . . ." County also requests that we take judicial notice (Evid. Code, §§ 452, 453, 459) of the "Contract for Legal Representation of Indigents, Contract #C3167100, between County of Contra Costa and the Contra Costa County Bar Association, dated June 30, 2009." We deny the request. The document is unnecessary to our resolution of the petition, as there is no dispute that Attorney Russo agreed to be paid at the County rate. Further, the document was not before the superior court. (*Peterson v. Superior Court, supra,* 10 Cal.4th 1185, 1200, fn. 9.)

[6] The superior court's order refers to 200 hours. In fact Russo declared that he had spent "almost 200 hours on this case that I have not even been paid for, nor am I seeking reimbursement for that time."

in light of the sworn testimony of witnesses at the grand jury, as well as pretrial motions, if any, and jury trial preparation. In all likelihood, these tasks are not work already performed by Attorney Russo or any other attorney representing a defendant during the prepreliminary hearing period. (Compare the topics covered in Cal. Criminal Law: Procedure and Practice (Cont.Ed.Bar 2009) §§ 4–12 with those in *id.*, §§ 13–40.) Additionally, appointment to represent a defendant before and during the preliminary hearing does not guarantee an appointment for a felony trial under the principles enunciated in *Harris*. (*Alexander v. Superior Court, supra,* 22 Cal.App.4th 901, 918–919.)

Upon our detailed review of *Harris*, where the California Supreme Court found an abuse of discretion in the superior court's failure to appoint Attorneys Susan Jordan and Leonard Weinglass to represent defendants Emily and William Harris, we find the circumstances presented in the case before us patently distinguishable. Charged by grand jury indictment in Alameda County with the kidnapping of Patty Hearst (§ 209), and facing life in prison, the indigent *Harris* defendants had asked for the specific appointment of Jordan and Weinglass. The *Harris* defendants were allegedly members of the Symbionese Liberation Army, and had been the subject of related prosecutions. Attorneys Jordan and Weinglass made the following specific and detailed showing in support of the motion to appoint them:

"Attorney Weinglass stated inter alia that he was appointed in October 1975 by the Los Angeles Superior Court to represent petitioner Emily Montague Harris in a proceeding brought on an eleven-count indictment involving in general the robbery of a Los Angeles sporting goods store; that that representation continued for approximately ten months, including numerous pretrial motions and a six-week trial, and concluded with sentencing in August 1976; that he currently represents both petitioners on appeal from that judgment; that his professional time has been almost exclusively devoted to the representation of the Harrises since October 1975; that in connection with his defense in the Los Angeles case it was necessary for him to coordinate facts and trial strategies with attorneys for eight other persons then and now subject to criminal proceedings for activities in connection with the so-called Symbionese Liberation Army, which activities were of some two years in duration and involved a large number of people; that many of the defense strategies and motions made in the Los Angeles proceeding will have to be renewed in modified form in the instant proceeding; that in the course of the Los Angeles prosecution he became familiar with vast amounts of documentary material involved in the case, including an F.B.I. report of over 800 pages concerning a part of the investigation, and that representation of petitioners in the instant case will also require familiarity with these materials; and that there will be many witnesses in common in the two cases.

"The declaration of Attorney Jordan stated inter alia that in September 1975 she was appointed to represent Mrs. Harris in federal proceedings involving a charge of possession of firearms (26 U.S.C. §§ 5861(d), 5871); that she was subsequently requested by Mrs. Harris to represent her in the aforementioned Los Angeles proceedings and was instrumental in securing the services of Mr. Weinglass, who was ultimately appointed for this purpose; that she occasionally consulted with Mrs. Harris throughout the nine-month pretrial period in the Los Angeles proceedings and was considered by Mrs. Harris as one of her attorneys; and that 'since September 1975 there has been an attorney-client relationship between [herself] and Mrs. Harris.'

"It also appears that Attorneys Jordan and Weinglass have familiarized themselves with the transcript in the federal case of *United States v. Hearst* (presently pending on appeal), in which the alleged victim of the aggravated kidnaping charged in the indictment was convicted of bank robbery and other federal offenses." (*Harris, supra*, 19 Cal.3d 786, 797–798, fn. 10.)

As we have seen, Attorney Russo represented defendant for 10 months from the filing of the complaint until filing of the indictment. But nothing in the record suggests that his work during that time was comparable to the extensive involvement of the attorneys in *Harris* in related jury trials, appeals and other proceedings. (*People v. Cole, supra*, 33 Cal.4th 1158, 1186.)[7] Instead, the work performed by Attorney Russo was no different than would be expected of any competent attorney, retained or appointed, who represented a defendant prior to superior court arraignment, and perhaps even less so given the fact that the case did not in fact proceed to a preliminary hearing. No prosecution witnesses, including the alleged victim, were examined by Attorney Russo. No opportunity to assess demeanor or otherwise evaluate any witness under oath was experienced. And, there was no opportunity to develop a defense. Russo's declaration indicates no first-hand interview of any witnesses or any specific independent investigation of relevant evidence. (*People v. Horton, supra*, 11 Cal.4th 1068, 1100.)

The *Harris* standard is appropriately an exacting one. Representing an alleged capital homicide defendant for 11 months and interviewing witnesses in other states was found insufficient to establish an abuse of discretion under *Drumgo-Harris*. (*People v. Cole, supra*, 33 Cal.4th 1158, 1187.) In our case the trial court properly noted and thoroughly considered the *Harris* factors, and denied the appointment of Attorney Russo in the exercise of its discretion. To adopt defendant's view in this case would require us to establish a

---

[7] Defendant strenuously argues that the use of the phrase "specialized knowledge" in the superior court's written order indicates that the court applied a factor not countenanced by *Harris*, and so abused its discretion. We disagree. Taken in context, it is apparent that the court was simply contrasting the facts of *Harris* and this case.

rule finding good cause to depart from the legislative mandate of section 987.2 in any case of some notoriety in which a defendant hires private counsel and runs out of money before arraignment in the superior court. We decline to do so.

## CONCLUSION AND DISPOSITION

■ The superior court did not abuse its discretion when it held that defendant failed to establish good cause to depart from the statutory scheme for appointment of assigned counsel specified in section 987.2. Therefore, the alternative writ is discharged, and the petition for writ of mandate is denied.

Margulies, Acting P. J., and Banke, J., concurred.

Petitioner's petition for review by the Supreme Court was denied August 18, 2010, S183975. Werdegar, J., and Moreno, J., were of the opinion that the petition should be granted.